BEASLEY, Justice.
**885 In this case we consider whether the Court of Appeals erred in vacating defendant's conviction under N.C.G.S. § 14-399(a) for felony littering upon concluding that the indictment failed to allege an essential element of the statutory crime and was fatally defective, thus depriving the trial court of jurisdiction over the accused. Because we conclude that the indictment was facially invalid, we affirm the decision of the Court of Appeals.
**886 On 27 April 2014, defendant Angela Rankin located a large metal tank containing fuel oil near a residential driveway on North Elam Avenue in Greensboro, North Carolina. Defendant wanted to take the tank to sell it as scrap metal. When she tried to lift the tank into her vehicle, she discovered that the oil inside made it too heavy to maneuver. So that the tank "wouldn't be as heavy," defendant drained the fuel oil onto the ground and then left the scene with the metal tank. The tank was reported stolen to the City of Greensboro Police Department, and an investigation revealed that defendant had committed the theft.
On 21 July 2014, defendant was indicted for felony littering of hazardous waste, misdemeanor larceny, and misdemeanor conspiracy to commit larceny. On 5 July 2016, a jury trial was held in Superior Court, Guilford County. Defendant moved to dismiss all charges at the close of the evidence, and the trial court dismissed the conspiracy charge. The jury found defendant guilty of felony littering of hazardous waste and not guilty of misdemeanor larceny. The trial court sentenced defendant to five to fifteen months of imprisonment, suspended the sentence, and placed her on supervised probation for eighteen months.
Defendant appealed her conviction to the Court of Appeals, arguing that the trial court lacked jurisdiction because the indictment failed to allege an essential element of the crime of felony littering of hazardous waste. The Court of Appeals majority agreed and vacated the conviction. State v. Rankin , -- N.C. App. ----, ----, 809 S.E.2d 358, 365 (2018). One judge dissented, asserting that the indictment was facially valid because the statutory language omitted from the indictment is an affirmative defense, not an essential element of the crime. Id. at ----, 809 S.E.2d at 368 (Berger, J., dissenting). The State filed a notice of appeal with this Court based on the issues raised in the dissenting opinion.
"[A] valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." State v. Campbell , 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (quoting State v. Sturdivant, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981) ). A valid indictment, among other things, serves to "identify the offense" being charged with certainty, to "enable the accused to prepare for trial," and to "enable the court, upon conviction, to pronounce the sentence." State v. Saults , 294 N.C. 722, 726, 242 S.E.2d 801, 805 (1978).
To be sufficient, an indictment must include, inter alia , "[a] plain and concise factual statement" asserting "facts supporting every element of a criminal offense and the defendant's commission thereof." N.C.G.S. § 15A-924(a)(5) (2017). If the indictment fails to state an essential **887 element of the offense, any resulting conviction must be vacated. See, e.g. , Campbell , 368 N.C. at 86, 772 S.E.2d at 443 ; see also State v. Wagner , 356 N.C. 599, 601, 572 S.E.2d 777, 779 (2002) (per curiam). The law disfavors application of rigid *791 and technical rules to indictments; so long as an indictment adequately expresses the charge against the defendant, it will not be quashed. See Sturdivant , 304 N.C. at 311, 283 S.E.2d at 731. For example, in State v. Mostafavi the defendant argued that the indictment charging him with obtaining property by false pretenses omitted an essential element of the crime because it failed to allege the precise amount of money the defendant received when he pawned the property obtained. 370 N.C. 681, 683, 811 S.E.2d 138, 140 (2018). This Court held that the indictment was facially valid because it clearly identified "the conduct which [was] the subject of the accusation" by alleging that the defendant received United States currency by pawning stolen property as if it were his own. Id. at 687, 811 S.E.2d at 142 (quoting N.C.G.S. § 15A-924(a)(5) (2017) ).
But an indictment will be quashed "when an indispensable allegation of the charge is omitted." State v. Russell , 282 N.C. 240, 245, 192 S.E.2d 294, 297 (1972) (citations omitted). For example, in State v. Murrell the defendant challenged an indictment charging him with robbery with a dangerous weapon, arguing that an essential element of the crime-presence of a dangerous weapon-was not alleged. 370 N.C. 187, 190-91, 804 S.E.2d 504, 506-07 (2017). We noted that "the possession, use, or threatened use of firearms, or other dangerous weapon, implement, or means" was an essential element of the offense. Id. at 194, 804 S.E.2d at 509 (footnote omitted). Furthermore, this Court found the indictment facially invalid, observing that "an allegation that it 'reasonably appear[ed] ... that a dangerous weapon was in the defendant's possession' is simply not equivalent to an allegation that defendant actually possessed a weapon." Id. at 196, 804 S.E.2d at 510 (alterations in original).
Likewise, when an indictment charges a defendant with a statutory offense, the document must allege all the essential elements of the offense. Id. at 193, 804 S.E.2d at 508 (citations omitted). If the words of a statute do not "set forth all the essential elements of the specified act intended to be punished, such elements must be charged in the bill [of indictment]." State v. Greer , 238 N.C. 325, 329, 77 S.E.2d 917, 920 (1953) (quoting State v. Cole , 202 N.C. 592, 597, 163 S.E. 594, 597 (1932) ); see also, e.g. , State v. Hunter , 299 N.C. 29, 41, 261 S.E.2d 189, 197 (1980) (stating that although an indictment need not track the language of the statute completely, an indictment charging the violation of a statute in general terms only can be insufficient to confer jurisdiction on the trial **888 court); State v. Cook , 272 N.C. 728, 158 S.E.2d 820 (1968) (holding that the language of a warrant for driving while license revoked, which referred to a statutory provision with intent to charge the offense therein, was facially invalid for failing to allege an essential element: that the defendant drove on a public highway).
The indictment in this case charged that defendant:
unlawfully, willfully and feloniously did intentionally and recklessly spill and dispose of litter on property not owned by the defendant, the property owned and controlled by the City of Greensboro and not into a litter receptacle as defined in General Statute 14-399(A)(2). The litter discarded was hazardous waste.
The statute at issue here states:
(a) No person, including any firm, organization, private corporation, or governing body, agents or employees of any municipal corporation shall intentionally or recklessly throw, scatter, spill or place or intentionally or recklessly cause to be blown, scattered, spilled, thrown or placed or otherwise dispose of any litter upon any public property or private property not owned by the person within this State or in the waters of this State including any public highway, public park, lake, river, ocean, beach, campground, forestland, recreational area, trailer park, highway, road, street or alley except:
(1) When the property is designated by the State or political subdivision thereof for the disposal of garbage and refuse, and the person is authorized to use the property for this purpose; or
(2) Into a litter receptacle in a manner that the litter will be prevented from being carried away or deposited by the *792 elements upon any part of the private or public property or waters.
N.C.G.S § 14-399(a) (2017 & Supp. 2018). The indictment indisputably failed to allege facts satisfying subdivision (a)(1). The ultimate question before us is whether such facts are required; that is, whether subdivision (a)(1) sets out an affirmative defense or an essential element of felony littering. The former need not be alleged in a valid indictment, while the latter must be. Because the language of the statute does not explicitly resolve this issue, we turn to the well-established tenets of statutory interpretation.
**889 The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment. See State v. Beck , 359 N.C. 611, 614, 614 S.E.2d 274, 276-77 (2005) (citations omitted). Therefore, we must construe the statute while mindful of the criminal conduct that the legislature intends to prohibit. In re Banks , 295 N.C. 236, 244 S.E.2d 386 (1978). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." State v. Langley , --- N.C. ----, ----, 817 S.E.2d 191, 196 (2018) (quoting Midrex Techs., Inc. v. N.C. Dep't of Revenue , 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) ). "The Court will not adopt an interpretation which result[s] in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act." Nationwide Mut. Ins. Co. v. Mabe , 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996) (quoting Sutton v. Aetna Cas. & Sur. Co. , 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) ).
When the General Assembly uses an "unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning." Fidelity Bank v. N.C. Dep't of Revenue , 370 N.C. 10, 19, 803 S.E.2d 142, 149 (2017) (citations omitted). However, if a literal interpretation of a word or phrase's plain meaning will lead to "absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." Beck , 359 N.C. at 614, 614 S.E.2d at 277 (quoting Mazda Motors of Am., Inc. v. Sw. Motors, Inc. , 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) ). "Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office , 294 N.C. 60, 66, 241 S.E.2d 324, 328 (1978) (citations omitted).
An indictment need not include affirmative defenses to statutory crimes in order to be sufficient. See Sturdivant , 304 N.C. at 310, 283 S.E.2d at 731 ("[A]n indictment need not negate a defense to the stated crime; rather, it is left to the defendant to show his defenses at trial."). The characteristics of an affirmative defense are further defined in State v. Sanders , in which we stated that "[w]hen [a] defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself , the onus of proof as to such matter is upon the defendant." 280 N.C. 81, 85, 185 S.E.2d 158, 161 (1971) (emphasis added) (quoting State v. Johnson , 229 N.C. 701, 706, 51 S.E.2d 186, 190 (1949) ). Furthermore, "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage" and thus **890 should not be included in an indictment. State v. Birdsong , 325 N.C. 418, 422, 384 S.E.2d 5, 7 (1989) (quoting State v. Taylor, 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972) ).
Whether an exception to a statutorily defined crime is an essential element of that crime or an affirmative defense to it depends on whether the statement of the offense is complete and definite without inclusion of the language at issue. See State v. Dobbins , 277 N.C. 484, 502, 178 S.E.2d 449, 460 (1971) (citations omitted). The criminal conduct that the statute seeks to prohibit here is the depositing of litter in unauthorized locations by unauthorized persons. N.C.G.S. § 14-399(a) (prohibiting persons and entities from intentionally or recklessly throwing, scattering, or spilling any litter upon any public or private property within this state). Therefore, in addition to the required language of subdivision (a), the offense *793 of littering is not complete unless it excludes authorized locations and persons from its definition. See Dobbins , 277 N.C. at 502, 178 S.E.2d at 460. Subdivision (a)(1) does just that. Therefore, we hold that to be valid, the indictment charging felony littering must allege that the accused is an unauthorized person who deposited refuse on property not designated for such activity.
In the dissent's view, this Court should categorize subdivision (a)(1) as either an exception or qualification without regard to whether (a)(1) is a part of the complete legal definition of littering. This is because, according to the dissent, N.C.G.S. § 14-399(a) "creates criminal liability to redress the societal ill of littering." Using this standard, the dissent concludes that subsection (a) of N.C.G.S. § 14-399 contains a complete and definite description of littering, and the only matter left to decide is what kind of proviso subdivision (a)(1) is as these are described in State v. Norman , 13 N.C. 222, 226 1829. Norman described two kinds of provisos, one "which withdraws the case provided for from the operation of the act" and "the other adding a qualification, whereby a case is brought within that operation." Id. at 226.
This view is problematic for two reasons. First, it contradicts well-established binding precedent from this Court holding that the complete and definite description of a crime is one in which each essential element necessary to constitute that crime is included. Johnson , 229 N.C. at 706, 51 S.E.2d at 190 (observing that the State carries the burden of establishing the "essentials of the legal definition of the offense itself"); State v. Edwards , 190 N.C. 322, 324, 130 S.E. 10, 11 (1925) ("[I]n indictments on a statute the essential words descriptive of the offense or their just equivalent must be given ..." (quoting State v. Mooney , 173 N.C. 798, 800, 92 S.E. 610, 611 (1917) ) ); see also N.C.G.S. § 15A-924(a)(5) ("A
**891 criminal pleading must contain ... facts supporting every element of a criminal offense."). Furthermore, framing the issue in this narrow manner-whether subdivision (a)(1) is an exception or qualification-impermissibly limits the scope of the statutory interpretation and construction in which this Court was prompted to engage by the Court of Appeals' dissent: whether (a)(1) is an essential element or an exception to the crime of littering.
Even if we considered subdivision (a)(1) to be a proviso, that would not end our inquiry into whether it is an essential element of littering. In State v. Connor we observed that a proviso can be so "mixed up with the description of the offense" that it comprises an essential part of the statement of the crime. 142 N.C. 700, 704, 55 S.E. 787, 789 (1906). We hold that subdivision (a)(1) is so intertwined with the description of the offense of littering that it forms an essential element of the crime. As discussed further below, to hold otherwise would result in an absurdity. Likewise, concluding that subdivision (a)(1) is an exception, meaning it "withdraws the case provided for from the operation of the act," Norman , 13 N.C. (2 Dev) at 226, would necessitate the conclusion that the authorized persons described in (a)(1) are engaging in a form of "authorized littering" which by statutory definition is legally impossible because littering is the depositing of litter in unauthorized locations by unauthorized persons. Subdivision (a)(1) is a part of the definition of littering in that it describes the opposite of littering: authorized persons depositing refuse in authorized locations. In sum, subsection (a) describes what littering is, while subdivision (a)(1) describes what it is not. Finally, subdivision (a)(1) could not be a qualification, because it does not bring a case within the operation of the act.
Additionally, in Connor , immediately after stating the test for when a proviso may be omitted from an indictment, this Court emphasized:
The test here suggested, however, is not universally sufficient, and a careful examination of the principle will disclose that the rule and its application depends not so much on the placing of the qualifying words, or whether they are preceded by the terms, "provided" or "except;" but rather on the nature, meaning and purpose of the words themselves.
And if these words, though in the form of a proviso or an exception, are in fact, and by correct interpretation, but a part of the definition and description of the offense, *794 they must be negatived in the bill of indictment. **892 In such case, this is necessary, in order to make a complete statement of the crime for which defendant is prosecuted.
142 N.C. at 702, 55 S.E. at 788. In other words, the Court's primary task is to interpret the statutory language-its nature, meaning and purpose-to decide whether subdivision (a)(1) is an essential element of the crime of littering. No formulaic rule statement can replace the holistic inquiry required by statutory interpretation and construction.
The Court of Appeals dissent proffers that the language of the statute preceding the word "except" is the complete legal definition of the crime because that language essentially encompasses the literal meaning of the phrase "to litter"-"to scatter about carelessly"-and criminalizes that act while withdrawing persons authorized by subdivision (a)(1) from criminal liability for littering. Rankin , -- N.C. App. at ----, 809 S.E.2d at 366 (quoting Litter, Webster's New World College Dictionary (5th ed. 2014) ). Nonetheless, the plain meaning of a phrase will apply only if an unambiguous term is actually used and not defined in the statute. See Fidelity Bank , 370 N.C. at 19, 803 S.E.2d at 149 ( "In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning." (emphasis added) ) "To litter" does not appear in this statute, and while the language of the statute may encompass the literal meaning of the phrase "to litter," the legal definition extends beyond that phrase as evidenced by the surrounding language.[1] See N.C.G.S. § 14-399(a) (prohibiting intentional or reckless throwing, spilling, and placing, in addition to carelessly scattering, litter); see also N.C. Auto. Rate Admin. Office , 294 N.C. at 66, 241 S.E.2d at 328 (instructing that related parts of a statute must be interpreted as a whole).
**893 Moreover, N.C.G.S. § 14-399(a) must be read to incorporate subdivision (a)(1) as part of the legal definition of the crime to prevent absurd results. As noted by the Court of Appeals majority, "a trash collector disposing of waste in a city dump could be charged with littering and then have the burden of showing that his actions fell within an 'exception' to the littering statute." Rankin , --- N.C. App. at ----, 809 S.E.2d at 364-65 (majority opinion). If the General Assembly wanted to enable a trash collector to be criminally charged for doing his or her job and forced to demonstrate his or her innocence by proving an affirmative defense at trial, it could have indicated as much in the statute.[2] Construing this statute accordingly and applying widely accepted principles of statutory interpretation, while avoiding absurd results, compels the conclusion that the crime of littering has not occurred at all if the actor is a waste management professional *795 disposing of garbage at a landfill.[3] See State v. Jones , 367 N.C. 299, 306, 758 S.E.2d 345, 350 (2014) (applying the tenet that if "a literal interpretation of the language of a statute will lead to absurd results ... the reason and purpose of the law shall control and the strict letter thereof shall be disregarded" (quoting Beck , 359 N.C. at 614, 614 S.E.2d at 277 ) ).
The dissent opines that the absurdity doctrine is erroneously applied in our analysis here because it "applies to the act of interpreting a statute-to determining the statute's meaning" whereas this dispute **894 "is about how to classify the proviso in [subdivision] (a)(1), not how to interpret it." However, as previously discussed, classifying the language in subdivision (a)(1) as an essential element or an exception to the crime of littering is a matter of statutory interpretation. The role of the absurdity doctrine in this process is to provide a means to test the implications of a proposed interpretation of the statute against legislative intent. We must consider the possible results of our interpretation to determine whether that interpretation aligns with the intent of the legislature as evidenced by the history, context, goals, and spirit of the law.
We applied the absurdity doctrine thusly in State v. Jones and concluded that a strict construction of the statute would have allowed "individuals to escape criminal liability [for identity theft] simply by stating or signing a name that differ[ed] from the cardholder's name," a result we determined could not have been within the intent of the legislature when adopting the statute criminalizing identity fraud. 367 N.C. at 306, 758 S.E.2d at 350 (citing Beck , 359 N.C. at 614, 614 S.E.2d at 277 ). Likewise, if we interpret subdivision (a)(1) to be an exception to, rather than an essential element of, littering, an absurdity will result. Exposing a faulty interpretation of the statute, far from distorting the issue, is a necessary analytical exercise in resolving this case.
We conclude that subdivision (a)(1), which requires that the accused be an unauthorized person depositing refuse on land not designated by the State for such use, is an essential element of the crime of felony littering, however, we acknowledge the legislature's power to determine otherwise.[4] The State has conceded that the indictment upon which defendant was convicted failed to allege the portion of the definition **895 of littering contained in subdivision (a)(1). To sufficiently give notice to a defendant and allow her to prepare a defense, an indictment must include "[a] plain and concise factual statement" that "asserts *796 facts supporting every element of a criminal offense and the defendant's commission thereof." N.C.G.S. § 15A-924(a)(5). The indictment in this case failed to allege each element of the crime of littering, thereby depriving defendant of sufficient notice. Because the indictment failed to sufficiently allege all indispensable, essential elements of the offense, it was facially invalid and the trial court had no jurisdiction to enter a conviction on the charge against defendant. Accordingly, we affirm the Court of Appeals' decision to vacate defendant's conviction for felony littering of hazardous waste.
A significant portion of the dissenting opinion is devoted to the idea that the Criminal Procedure Act that took effect in July 1975 abrogated the common law rule that a defective indictment deprives a criminal court of jurisdiction. Not only is discussion of this issue outside the scope of review applicable to this case, but statutory interpretation reveals that the legislature intentionally left the common law remedy for invalid indictments intact when it enacted comprehensive revisions to the Criminal Procedure Act.
This case is before this Court based on a dissent in the Court of Appeals. See N.C.G.S. § 7A-30(2) (2017). Thus, the scope of review is "limited to those questions on which there was division in the intermediate appellate court," C.C. Walker Grading & Hauling, Inc. v. S.R.F. Mgmt. Corp. , 311 N.C. 170, 175, 316 S.E.2d 298, 301 (1984) (discussing N.C. R. App. P. 16 (1984) ), and this Court's review is "properly limited to the single issue addressed in the [Court of Appeals] dissent," Blumenthal v. Lynch , 315 N.C. 571, 577, 340 S.E.2d 358, 361 (1986). In their briefs to this Court, respectively, neither party asked this Court to address the remedy flowing from an invalid indictment, and had they attempted to do so, their effort would likely have been rejected. Id. at 577-78, 340 S.E.2d at 361-62, 315 N.C. 571 ("[W]e strongly disapprove of and discourage attempts by appellate counsel to bring additional issues before this Court without its appropriate order allowing counsel's motion to allow review of additional issues."). Absent exceptional circumstances,[5] it is vital that we adhere to the procedural rules as they are enforced against litigants **896 by this Court. Moreover, deciding this issue in the procedural context of this case deprives both parties of their opportunity to be heard with respect to this issue. Nonetheless, given that the dissent here has discussed the effect of the Criminal Procedure Act on the common law remedy for invalid indictments, we will briefly address the issue.
In the absence of a contrary decision by the General Assembly, the common law remains in effect in North Carolina. N.C.G.S. § 4-1. Whether a particular statute supplants a common law remedy is a question of statutory interpretation. See, e.g. , Quick v. United Benefit Life Ins. Co. , 287 N.C. 47, 54-56, 213 S.E.2d 563, 568-69 (1975) (applying tenets of statutory interpretation to determine whether N.C.G.S. § 31A-15 supplanted the common law principle prohibiting a person from profiting from his or her wrongdoing); Orange County. v. Heath , 282 N.C. 292, 296-97, 192 S.E.2d 308, 310-11 (1972) (using principles of statutory interpretation to determine whether N.C.G.S. § 1A-1, Rule 65 abrogated the common law rule of governmental immunity for municipalities). Therefore, the previously stated rules that guide statutory interpretation are applicable, as well as rules relating to statutory abrogation of common law.
In determining legislative intent, we must consider the history of the statute and the reason for its enactment. See Black v. Littlejohn , 312 N.C. 626, 630, 325 S.E.2d 469, 473 (1985). "It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law." State v. Benton , 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970). Furthermore, *797 in the quest to interpret a statute, courts will not presume that the legislature intended to repeal a law by implication. Id. , at 658, 174 S.E.2d at 804.
The dissent explores the history and context behind the enactment of the Criminal Procedure Act, including an in-depth report prepared for the legislature by a special committee proceeding adoption of the Act. Legislative Program and Report to the General Assembly of North Carolina by the Criminal Code Commission (1973). The documented history of the purpose and function of indictments along with the legislature's efforts to assess the impact of the previous enactment of the criminal code provide ample evidence that the legislature was well aware of the common law remedy for invalid indictments. Still, there are no provisions that contradict or abrogate this remedy. The absence of such provisions demonstrates that the General Assembly did not intend to change the common law discussed in the dissent.
The provisions related to indictments in the Act, codified in the North Carolina General Statutes at chapter 15A, evidence the legislature's **897 intent to preserve the common law rule that an indictment is required to invoke the court's jurisdiction in felony cases. Article 32 mandates that for felony charges "prosecutions originating in the superior court must be upon pleadings. " N.C.G.S. § 15A-642(a) (emphasis added), and that the appropriate pleading for a felony charge is an indictment. N.C.G.S. § 15A-923(a). Further, the remedy for a facially invalid indictment is thus: "Upon motion of a defendant under G.S. 15A-952(b) the court must dismiss the charges contained in a pleading which fails to charge the defendant with a crime[6] in a manner required by subsection (a) ..." N.C.G.S. § 15A-924(e) (emphasis added). In other words, pursuant to the Act, the court cannot continue criminal prosecution if the indictment fails to charge the defendant with a crime. These provisions represent the statutory adoption of the common law rule that a valid indictment is required for a court to retain jurisdiction to prosecute a felony charge, as well as the common law remedy for lack of jurisdiction-dismissal.
Any assertion that the legislature implicitly abrogated the common law rule by enacting the Criminal Procedure Act would be unjustified in light of the legislature's initial comprehensive reform of the Act and the detailed commentary included with the codified statutes. The Criminal Code Commission's proposal emerged after a total of thirty-eight meeting days, in which it "carefully considered the best of North Carolina practice" before submitting final recommendations. Legislative Program and Report to the General Assembly of North Carolina by the Criminal Code Commission at i-ii (1973).
The General Assembly acknowledged and approved of the common law remedy for invalid indictments with the enactment of the revised Criminal Procedure Act. The official commentary accompanying N.C.G.S. § 15A-924 states in part: "The pleading rule, requiring factual (but not evidentiary) allegations to support each element, is in accord with our traditional ideas and provides a concise statutory statement." N.C.G.S. § 15A-924 official cmt. (citing Greer , 238 N.C. 325, 77 S.E.2d 917 ). In Greer we held that an indictment is facially invalid when it omits any essential elements of the crime to be charged. Id. As a result of **898 the defective indictment, the Court in Greer applied the common law remedy for defective indictments. Id. The official commentary referencing Greer demonstrates that the legislature explicitly endorsed the common law rules for indictments as stated in that case, including the common law remedy for invalid indictments. See Greer , 238 N.C. at 332, 77 S.E.2d at 922. Furthermore, in the decades since the enactment of the revised Criminal Procedure Act, the common law remedy for invalid indictments has been applied time and again *798 by the appellate courts. See, e.g., State v. Simpson , 302 N.C. 613, 616, 276 S.E.2d 361, 363 (1981) ("[A] valid bill of indictment is essential to the jurisdiction of the court to try defendant for a felony."); State v. Mostafavi , 370 N.C. 681, 684, 811 S.E.2d 138, 141 (2018) (observing that "a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony" (quoting Sturdivant, 304 N.C. at 308, 283 S.E.2d at 729 ) ). The General Assembly, no doubt aware of this practice, has never acted to abrogate this common law rule, although it does retain the right to do so for policy-related reasons. There is no unsettled question of whether the common law remedy for invalid indictments was abrogated by the Criminal Procedure Act.
We conclude that subdivision (a)(1), which requires that the accused be an unauthorized person depositing refuse on land not designated by the State for such use, is an essential element of the crime of felony littering. Accordingly, we affirm the holding of the Court of Appeals.
AFFIRMED.

While the phrase 'to litter' does not appear in this statute, the word 'litter' is statutorily defined:
any garbage, rubbish, trash, refuse, can, bottle, box, container, wrapper, paper, paper product, tire, appliance, mechanical equipment or part, building or construction material, tool, machinery, wood, motor vehicle or motor vehicle part, vessel, aircraft, farm machinery or equipment, sludge from a waste treatment facility, water supply treatment plant, or air pollution control facility, dead animal, or discarded material in any form resulting from domestic, industrial, commercial, mining, agricultural, or governmental operations. While being used for or distributed in accordance with their intended uses, "litter" does not include political pamphlets, handbills, religious tracts, newspapers, and other similar printed materials the unsolicited distribution of which is protected by the Constitution of the United States or the Constitution of North Carolina.
N.C.G.S. § 14-399(i)(4) (2017 & Supp. 2018).

The Court of Appeals also discussed State v. Hinkle , 189 N.C. App. 762, 659 S.E.2d 34 (2008), wherein the Court of Appeals held that subdivision (a)(2) of N.C.G.S. § 14-399(a) constituted an essential element of littering. In that case the Court of Appeals applied the absurdity doctrine, opining that "[w]ithout the 'except ... [i]nto a litter receptacle' language, placing a broken rubber band into a trash can at our Court would be littering." Hinkle , 189 N.C. App. at 769, 659 S.E.2d at 38 (second and third alterations in original). It is significant that in the ten years since Hinkle was decided, the legislature has not revised N.C.G.S. § 14-399 to contradict this holding. In Rankin , the Court of Appeals concluded that "[b]ecause subsections (a)(1) and (a)(2) serve identical purposes in this statute, it would be illogical to suggest that one is an essential element but the other is not." Rankin , --- N.C. App. at ----, 809 S.E.2d at 363.

By way of analogy, the crime of assault on a female requires that the victim be a female and the accused a male who is at least eighteen years of age. N.C.G.S. § 14-33(c)(2) (2017 & Supp. 2018) ; State v. Herring , 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988) ("The elements of assault on a female are (1) an assault, (2) upon a female person, (3) by a male person (4) who is at least eighteen years old."). Therefore, the crime has not occurred if the victim is not a female, or if the accused is under eighteen or is not a male. Likewise here, the crime of littering has not occurred if the accused is a sanitation worker disposing of waste at an authorized location. Just as it would be absurd to assert that a female charged with assault on a female must plead her gender as an affirmative defensive, it is equally unfair to burden a sanitation worker with the task of establishing his or her authorization to dispose of waste.

It is notable that the General Assembly has, in other circumstances, expressly treated certain facts as constituting affirmative defenses. See, e.g. , N.C.G.S. § 15A-905(c) (2017) (describing the procedure required to give notice when the accused anticipates raising any one of various affirmative defenses: alibi, duress, entrapment, insanity, mental infirmity, diminished capacity, self-defense, accident, automatism, involuntary intoxication, or voluntary intoxication). In the context of criminal littering statutes, several legislatures in other states have created clear distinctions between an affirmative defense to the crime of littering and essential elements of the crime. See, e.g. , Cal. Penal Code § 374(a) (West 2018) ("Littering means the willful or negligent throwing, dropping, placing, depositing, or sweeping, or causing any such acts, of any waste matter on land or water in other than appropriate storage containers or areas designated for such purposes ." (emphasis added) ); Colo. Rev. Stat. Ann. § 18-4-511(2)(a) (West 2018) ("It shall be an affirmative defense [to littering] that: Such property is an area designated by law for the disposal of such material and the person is authorized by the proper public authority to so use the property...."); Fla. Stat. § 403.413(6)(h) (2018) ("[T]he state does not have the burden of proving that the person did not have the right or authority to dump the litter. The defendant has the burden of proving that he or she had authority to dump the litter ...").

"Where "issues of importance which are frequently presented to state agencies and the courts require a decision in the public interest," this Court will invoke Rule 2 of the North Carolina Rules of Appellate Procedure to address those issues. Blumenthal , 315 N.C. at 578, 340 S.E.2d at 362. However, whether the Criminal Procedure Act abrogated the common law remedy for invalid indictments is not a question frequently presented to state agencies or courts, so the invocation of Rule 2 would be inappropriate in this case.

Although the dissent interprets N.C.G.S. § 15A-954(a) to preclude trial judges from dismissing fatally defective indictments on their own motion, nothing in the statutory language limits their authority to situations in which the defendant makes a dismissal motion. In addition, the fact that the General Assembly has adopted short form indictments for certain offenses does not undercut the validity of the common law rule, given that the same lack of jurisdiction exists when an indictment fails to comply with the statutory requirements for such pleadings.