IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-876

Filed: 18 August 2020

Granville County, No. 18 CRS 050036

STATE OF NORTH CAROLINA

v.

DAVID LEMUS, Defendant, and 1st ATLANTIC SURETY COMPANY, Surety.

Appeal by surety from order entered 11 June 2019 by Judge Becky Holt in Granville County Superior Court. Heard in the Court of Appeals 17 March 2020.

*Tharrington Smith, LLP, by Stephen G. Rawson and Colin Shive, for appellee Granville County Board of Education.*

*Ragsdale Liggett, PLLC, by Amie C. Sivon, Mary M. Webb, and Kimberly N. Dixon; and Hill Law, PLLC, by M. Brad Hill, for surety-appellant.*

DIETZ, Judge.

In 2018, David Lemus was charged with a felony and jailed pending trial. The trial court conditioned Lemus's pretrial release on the execution of a $100,000 secured bond. Two weeks later, Lemus and his surety, 1st Atlantic Surety Company, executed and filed a $100,000 bond, at which point the law required the State to immediately "effect the release" of Lemus.

That did not happen. Instead, the State continued to detain Lemus under an agreement with federal immigration authorities until the federal government arrived, took custody of Lemus, and ultimately deported him to Mexico.

After Lemus failed to appear at his state criminal trial (because the State chose to hand him over the federal government, which then deported him), the trial court forfeited Lemus's $100,000 bond. Lemus's surety moved for relief from the forfeiture judgment, arguing that the bond forfeiture statutes apply only if the "defendant was released" and Lemus was never released. The trial court rejected that petition for relief.

We reverse. As explained below, under the plain language of the bail statutes, the trial court cannot enter a bond forfeiture unless, once the defendant has satisfied the conditions placed upon his release and there is no other basis in state law to retain custody of the defendant, the State sets the defendant free. This plain reading of the statute also enables the bond forfeiture laws to serve their intended purpose—to ensure that defendants report to court for their scheduled criminal proceedings.

Here, the State knew Lemus would not be at his criminal trial because the State handed him over for deportation. The federal government even offered to coordinate with the State so that Lemus could be returned for trial, but the State declined.

Interpreting the bail statutes to permit forfeiture in these circumstances conflicts with those statutes' plain language, does nothing to serve their statutory purpose, and ultimately harms undocumented immigrants and their families—some of the poorest, most vulnerable people in our society—for absolutely no reason.

Accordingly, we hold that Lemus was never "released" as that term is used in the bail statutes, and the trial court had no statutory authority to enter a forfeiture. The trial court therefore abused its discretion when it declined to grant relief from that forfeiture. We reverse the trial court's order and remand with instructions to grant relief from the final forfeiture judgment.

**Facts and Procedural History**

In April 2018, law enforcement officers arrested David Lemus for a felony assault charge. On 14 April 2018, the trial court conditioned Lemus's pretrial release upon execution of a $100,000 secured bond. On 25 April 2018, Lemus and his surety, 1st Atlantic Surety Company, posted a $100,000 secured bond.

After learning that Lemus satisfied the conditions for release by posting that secured bond, the State chose not to release him. Instead, the State held Lemus for around twenty-four hours, until agents from U.S. Immigration and Customs Enforcement arrived and deputies from the Granville County Sheriff's Office handed over Lemus directly into ICE custody. On 18 May 2018, ICE sent a letter to the Granville County Clerk of Superior Court, informing the State that ICE intended to enforce an order of removal against Lemus and deport him from the country. The letter provided contact information so that, if the State still has an interest in prosecuting Lemus for state crimes, "appropriate arrangements can be made for him or her to be returned to your jurisdiction." The State did not request that Lemus be

returned to North Carolina for trial.

Lemus remained in federal custody for a month until, on 26 May 2018, the federal government deported Lemus to his home country of Mexico. As a result, Lemus failed to appear in Granville County Superior Court on 23 July 2018 for his scheduled criminal trial.

The day after Lemus missed his court date, the trial court entered a bond forfeiture order in favor of the State and against Lemus and his surety. In some early procedural maneuvering, Lemus's surety moved to set aside that forfeiture. The State did not appear in that proceeding, but the Granville County Board of Education, represented by a private law firm, entered an appearance and opposed the surety's motion.

The surety later sought to withdraw that motion, and the school board moved for sanctions against the surety. The trial court permitted the surety to withdraw its motion and denied the school board's motion for sanctions. The school board appealed the denial of its sanctions motion to this Court, but the Court rejected the board's arguments and affirmed the trial court's order. *State v. Lemus*, __ N.C. App. __, 838 S.E.2d 204 (2020) (unpublished).

Then, on 15 March 2019, Lemus's surety filed a petition for remission of forfeiture after judgment under N.C. Gen. Stat. § 15A-544.8(b)(2), arguing that Lemus was never released but instead handed over directly to federal immigration

agents. Therefore, the surety asserted, there were "extraordinary circumstances" warranting relief from the bond forfeiture. The school board once again appeared and opposed the petition and also moved for sanctions. The trial court denied the surety's petition, and the surety timely appealed.

**Analysis**

The surety asserts a number of arguments in this case but we need only address the statutory argument, which can be summarized as this: The bond forfeiture statutes apply only to "a defendant who was released" under those statutes. Lemus was never released. Therefore, the trial court had no authority to conduct a forfeiture proceeding and should have granted the petition to set aside the forfeiture for that reason.

We agree. The statutory provisions governing this issue all are codified in the same section of our General Statutes, in an article titled "Bail." *See* N.C. Gen. Stat. § 15A-531 *et seq.* These provisions are further subdivided into two parts, with the titles "General Provisions" and "Bail Bond Forfeiture."

The first part governs when and under what conditions a defendant charged with a crime and in State custody may be given "pretrial release." *See, e.g.*, N.C. Gen. Stat. §§ 15A-533, 15A-534. For defendants like Lemus, having conditions of pretrial release determined is mandatory, not optional: "A defendant charged with a noncapital offense *must* have conditions of pretrial release determined." *Id.* § 15A-

533(b) (emphasis added). Similarly, once the conditions of this release are satisfied, the State must immediately release the defendant. This is, again, mandatory, not optional:

> [A]ny judicial official *must* effect the release of that person upon satisfying himself that the conditions of release have been met. In the absence of a judicial official, any law-enforcement officer or custodial official having the person in custody *must* effect the release upon satisfying himself that the conditions of release have been met . . . . Satisfying oneself whether conditions of release are met includes determining if sureties are sufficiently solvent to meet the bond obligation . . . .

*Id.* § 15A-537(a) (emphasis added).

Unlike this first part of the bail statutes, which addresses many different means by which a defendant can be released before trial, the second part of these statutes deals exclusively with release under a bail bond and the forfeiture of that bond. *See id.* § 15A-544.1 *et seq.* It contains a series of procedural requirements to forfeit a bail bond, to request that a bond forfeiture be set aside, to enter a final judgment of forfeiture, and to obtain relief from a final judgment of forfeiture. *Id.* But, importantly, all of these forfeiture provisions turn on an initial precondition established in the statute:

> (a) If a defendant *who was released* under Part 1 of this Article upon execution of a bail bond fails on any occasion to appear before the court as required, the court shall enter a forfeiture for the amount of that bail bond in favor of the State against the defendant and against each surety on the bail bond.

*Id.* § 15A-544.3(a) (emphasis added).

This case thus presents us with a straightforward but critical question of statutory interpretation: what is the meaning of the term "released" in the bail statutes? Our task in statutory construction is to "determine the meaning that the legislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889, 821 S.E.2d 787, 792 (2018). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *Id.* But, if the statutory language is "clear and unambiguous," then the statutory analysis ends and the court gives the words in the statute "their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005).

We therefore begin with the plain language of the bail statutes and, in particular, the meaning of the words "release" and "released" as they appear throughout these statutes. There is a definitional section at the beginning of this series of statutes, but it does not contain a definition of either "release" or "released." N.C. Gen. Stat. § 15A-531. Those words therefore "must be given their common and ordinary meaning." *State v. Rieger*, __ N.C. App. __, __, 833 S.E.2d 699, 701 (2019).

The word "release" is defined as "[t]o set free from confinement, restraint, or bondage" or "[a]n authoritative discharge, as from an obligation or from prison." *Release, Webster's II New College Dictionary* (1995). Similarly, the term bail itself is

understood as meaning a security given for the appearance of the accused to obtain his release from confinement. 8A Am. Jur. 2d *Bail & Recognizance* § 1 (1997). Thus, the ordinary understanding of the word release in this context is to be physically set free from custody and confinement.

Although this case presents a question of first impression, this plain-language interpretation implicitly has been adopted in cases from this Court and our Supreme Court that addressed the responsibilities of bail agents. Those cases emphasize that release occurs when the State hands over custody of the defendant to the bail agent and that, upon posting the bond, the physical custody of the defendant transfers from the State to the bail agent. *See, e.g.*, *State v. Mathis*, 349 N.C. 503, 509, 509 S.E.2d 155, 159 (1998); *State v. Vikre*, 86 N.C. App. 196, 199–200, 356 S.E.2d 802, 805 (1987).

In addition, this plain-language interpretation explicitly has been adopted by courts in other jurisdictions confronted with the issue raised in this case. For example, the Colorado Court of Appeals held that a bond forfeiture was invalid because "the defendant was not released into the legal custody of his surety. The record shows that he was transferred directly from the Adams County Sheriff's Department into the custody of the INS [the U.S. Immigration and Naturalization Service]." *People v. Gonzales*, 745 P.2d 263, 264 (Colo. App. 1987). Thus, the court reasoned, "because defendant was not released into the custody of his sureties, he was not released within the meaning of § 16-4-109(2)," the Colorado statute governing

the pretrial "release" of a defendant who posts a bond. *Id.* at 264–65.

We agree with the Colorado Court of Appeals' reasoning and interpretation of the word "release." Here, when Lemus and his surety satisfied the conditions placed upon his release, and there was no other basis for the State to retain custody of Lemus, the State was required to immediately effect his release. N.C. Gen. Stat. §§ 15A-534, 15A-537. That didn't happen. Instead, despite Lemus having posted the required bond, the State continued to detain him, under an agreement with federal immigration authorities, until federal agents could arrive. At that point, the State transferred Lemus directly from State custody to federal custody. At no point was Lemus set free, and thus, he was never "released" from the State's custody.

The school board responds to this argument in two ways: with procedural arguments and with policy ones. First, the school board argues that Section 15A-544.5 of the bail forfeiture statutes provides that there "shall be no relief from a forfeiture except as provided in this section" and then lists a series of enumerated grounds for relief. *Id.* § 15A-544.5(a)–(b). Similarly, the school board argues that Section 15A-544.8, which governs relief from a final judgment of forfeiture, contains an even narrower list of enumerated grounds for relief. *Id.* § 15A-544.8(a)–(b). Thus, the school board argues, the trial court properly denied the surety's request for relief because none of the enumerated grounds for relief under either statute apply in this case.

We reject this argument. All of the enumerated grounds for either setting aside a forfeiture or granting relief from a forfeiture judgment—such as the underlying charges being dropped, or the defendant being arrested and jailed somewhere else, or the surety never receiving notice of the forfeiture—presuppose that the trial court had statutory authority to enter a valid forfeiture to begin with. *Id.* §§ 15A-544.5(b)(1)–(7), 15A-544.8(b). Here, the trial court did not have that authority. The statutory authority to forfeit a bail bond exists only for a defendant "who was released" and, as explained above, Lemus was never released. *Id.* § 15A-544.3(a). Thus, the surety properly could move the trial court for relief from the forfeiture judgment on the ground that the court had no legal authority to enter it at the outset.

The school board also makes a series of policy arguments against this interpretation. But in doing so, the board inadvertently underscores why its arguments fail: although the school board indeed makes "policy" arguments, those arguments have nothing to do with the policy underlying bail bond forfeiture, which furthers the State's interest in ensuring that criminal defendants released on bond appear at their criminal trials.

For example, much of the school board's policy arguments focus on framing Lemus's surety as a bad actor, asserting that "the burden should not be on the State to assist the surety in its own commercial enterprise." But this argument is a giant non sequitur. The surety's actions have nothing to do with whether the State

complied with the necessary precondition of a bond forfeiture—the obligation to release the defendant.

The school board also contends that this Court's interpretation of the word "release" would make it difficult, or impossible, for the State to cooperate with other law enforcement agencies or governments seeking custody of a defendant. This is simply wrong. Nothing prevents the State from alerting federal agencies, or law enforcement in other states, or anyone else, of the time and place at which the State will release a defendant who has satisfied the conditions of release. Even if a defendant released on bond walks out of a county jail and is immediately taken into custody by federal immigration authorities, that defendant was "released" under our State's bail statutes because he was set free from State custody.

But in this scenario, many other people can be waiting outside that county jail as well—most importantly, the defendant's family or the bail agent. This, in turn, permits the bail statutes to function as intended. The defendant's family or bail agent will know that some other government or agency detained the defendant for some other reason. The family or bail agent then can take various steps established in the statutes to keep track of the defendant's whereabouts and status and, if necessary, seek to change the conditions of pretrial release or terminate the bond obligation altogether. *See generally* N.C. Gen. Stat. §§ 15A-534, 15A-538, 15A-544.5. The State deprived Lemus, his family, and the surety of this opportunity by continuing to detain

Lemus after he posted the bond and then handing him over to federal agents without first releasing him.

The school board next argues that this Court's interpretation of the statute would make it harder for undocumented immigrants to be released on bond. Again, this is simply wrong. The State is required by law to set reasonable conditions of pretrial release for every criminal defendant. *Id.* § 15A-533. If those conditions are satisfied, the State must release the defendant. Our opinion has no impact on this mandatory statutory process.

Finally, we note that our interpretation is fully consistent with the actual policy underlying our bond statutes—to protect the State's interest in releasing criminal defendants before trial while ensuring that those defendants return to court for their criminal proceedings. *Vikre*, 86 N.C. App. at 199, 356 S.E.2d at 804; *State v. Robinson*, 145 N.C. App. 658, 661, 551 S.E.2d 460, 462 (2001). Here, the State had no interest in Lemus appearing at his criminal trial in North Carolina anymore. We know this because it was *the State* that chose to hand Lemus over to federal immigration authorities so that he could be permanently deported from the United States, making it impossible for him to appear at a state criminal trial. And, even after those federal authorities offered the State an opportunity to bring Lemus back to North Carolina for trial, the State declined to take it.

Simply put, this was never a case in which the $100,000 secured bond served

any purpose other than to exploit Lemus and his family. After all, as the parties acknowledged at oral argument, these bail bonds require a large up-front premium by the defendant (or, frequently, the defendant's family). These bail bonds also often require that the defendant or family members offer up other property as collateral or agree to be liable for the bond amount if it is forfeited. So in a case like this one, where the State turned the defendant over to the federal government for deportation with no intention of actually trying the defendant for the alleged crimes, the bail bond functions only as a tax on undocumented immigrants and their families—often among the poorest and most vulnerable people in our State. It is exceedingly rare for this Court to ignore a statute's plain language, even if we felt it would produce a better outcome. We certainly will not do so here, where departure from the plain language victimizes some of the most marginalized people of our State.

In sum, we hold that the bond forfeiture statutes, by their plain terms, apply only to "a defendant who was released." N.C. Gen. Stat § 15A-544.3. Lemus satisfied the conditions set by the trial court for his release, but he was not released. Instead, the State continued to detain him, despite the bond he posted, until he could be transferred to the custody of federal immigration authorities for deportation. Because the State never released Lemus, the trial court erred by entering a bond forfeiture and further erred by declining to set that forfeiture aside. We therefore reverse the trial court's order.

## Conclusion

For the reasons stated above, we reverse the trial court's order and remand with instructions to grant relief from the final forfeiture judgment.

REVERSED AND REMANDED.

Judges STROUD and HAMPSON concur.