IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-876

 Filed: 18 August 2020

Granville County, No. 18 CRS 050036

STATE OF NORTH CAROLINA

 v.

DAVID LEMUS, Defendant, and 1st ATLANTIC SURETY COMPANY, Surety.

 Appeal by surety from order entered 11 June 2019 by Judge Becky Holt in

Granville County Superior Court. Heard in the Court of Appeals 17 March 2020.

 Tharrington Smith, LLP, by Stephen G. Rawson and Colin Shive, for appellee
 Granville County Board of Education.

 Ragsdale Liggett, PLLC, by Amie C. Sivon, Mary M. Webb, and Kimberly N.
 Dixon; and Hill Law, PLLC, by M. Brad Hill, for surety-appellant.

 DIETZ, Judge.

 In 2018, David Lemus was charged with a felony and jailed pending trial. The

trial court conditioned Lemus’s pretrial release on the execution of a $100,000 secured

bond. Two weeks later, Lemus and his surety, 1st Atlantic Surety Company, executed

and filed a $100,000 bond, at which point the law required the State to immediately

“effect the release” of Lemus.

 That did not happen. Instead, the State continued to detain Lemus under an

agreement with federal immigration authorities until the federal government

arrived, took custody of Lemus, and ultimately deported him to Mexico.
 STATE V. LEMUS

 Opinion of the Court

 After Lemus failed to appear at his state criminal trial (because the State chose

to hand him over the federal government, which then deported him), the trial court

forfeited Lemus’s $100,000 bond. Lemus’s surety moved for relief from the forfeiture

judgment, arguing that the bond forfeiture statutes apply only if the “defendant was

released” and Lemus was never released. The trial court rejected that petition for

relief.

 We reverse. As explained below, under the plain language of the bail statutes,

the trial court cannot enter a bond forfeiture unless, once the defendant has satisfied

the conditions placed upon his release and there is no other basis in state law to retain

custody of the defendant, the State sets the defendant free. This plain reading of the

statute also enables the bond forfeiture laws to serve their intended purpose—to

ensure that defendants report to court for their scheduled criminal proceedings.

 Here, the State knew Lemus would not be at his criminal trial because the

State handed him over for deportation. The federal government even offered to

coordinate with the State so that Lemus could be returned for trial, but the State

declined.

 Interpreting the bail statutes to permit forfeiture in these circumstances

conflicts with those statutes’ plain language, does nothing to serve their statutory

purpose, and ultimately harms undocumented immigrants and their families—some

of the poorest, most vulnerable people in our society—for absolutely no reason.

 -2-
 STATE V. LEMUS

 Opinion of the Court

 Accordingly, we hold that Lemus was never “released” as that term is used in

the bail statutes, and the trial court had no statutory authority to enter a forfeiture.

The trial court therefore abused its discretion when it declined to grant relief from

that forfeiture. We reverse the trial court’s order and remand with instructions to

grant relief from the final forfeiture judgment.

 Facts and Procedural History

 In April 2018, law enforcement officers arrested David Lemus for a felony

assault charge. On 14 April 2018, the trial court conditioned Lemus’s pretrial release

upon execution of a $100,000 secured bond. On 25 April 2018, Lemus and his surety,

1st Atlantic Surety Company, posted a $100,000 secured bond.

 After learning that Lemus satisfied the conditions for release by posting that

secured bond, the State chose not to release him. Instead, the State held Lemus for

around twenty-four hours, until agents from U.S. Immigration and Customs

Enforcement arrived and deputies from the Granville County Sheriff’s Office handed

over Lemus directly into ICE custody. On 18 May 2018, ICE sent a letter to the

Granville County Clerk of Superior Court, informing the State that ICE intended to

enforce an order of removal against Lemus and deport him from the country. The

letter provided contact information so that, if the State still has an interest in

prosecuting Lemus for state crimes, “appropriate arrangements can be made for him

or her to be returned to your jurisdiction.” The State did not request that Lemus be

 -3-
 STATE V. LEMUS

 Opinion of the Court

returned to North Carolina for trial.

 Lemus remained in federal custody for a month until, on 26 May 2018, the

federal government deported Lemus to his home country of Mexico. As a result,

Lemus failed to appear in Granville County Superior Court on 23 July 2018 for his

scheduled criminal trial.

 The day after Lemus missed his court date, the trial court entered a bond

forfeiture order in favor of the State and against Lemus and his surety. In some early

procedural maneuvering, Lemus’s surety moved to set aside that forfeiture. The State

did not appear in that proceeding, but the Granville County Board of Education,

represented by a private law firm, entered an appearance and opposed the surety’s

motion.

 The surety later sought to withdraw that motion, and the school board moved

for sanctions against the surety. The trial court permitted the surety to withdraw its

motion and denied the school board’s motion for sanctions. The school board appealed

the denial of its sanctions motion to this Court, but the Court rejected the board’s

arguments and affirmed the trial court’s order. State v. Lemus, __ N.C. App. __, 838

S.E.2d 204 (2020) (unpublished).

 Then, on 15 March 2019, Lemus’s surety filed a petition for remission of

forfeiture after judgment under N.C. Gen. Stat. § 15A-544.8(b)(2), arguing that

Lemus was never released but instead handed over directly to federal immigration

 -4-
 STATE V. LEMUS

 Opinion of the Court

agents. Therefore, the surety asserted, there were “extraordinary circumstances”

warranting relief from the bond forfeiture. The school board once again appeared and

opposed the petition and also moved for sanctions. The trial court denied the surety’s

petition, and the surety timely appealed.

 Analysis

 The surety asserts a number of arguments in this case but we need only

address the statutory argument, which can be summarized as this: The bond

forfeiture statutes apply only to “a defendant who was released” under those statutes.

Lemus was never released. Therefore, the trial court had no authority to conduct a

forfeiture proceeding and should have granted the petition to set aside the forfeiture

for that reason.

 We agree. The statutory provisions governing this issue all are codified in the

same section of our General Statutes, in an article titled “Bail.” See N.C. Gen. Stat.

§ 15A-531 et seq. These provisions are further subdivided into two parts, with the

titles “General Provisions” and “Bail Bond Forfeiture.”

 The first part governs when and under what conditions a defendant charged

with a crime and in State custody may be given “pretrial release.” See, e.g., N.C. Gen.

Stat. §§ 15A-533, 15A-534. For defendants like Lemus, having conditions of pretrial

release determined is mandatory, not optional: “A defendant charged with a

noncapital offense must have conditions of pretrial release determined.” Id. § 15A-

 -5-
 STATE V. LEMUS

 Opinion of the Court

533(b) (emphasis added). Similarly, once the conditions of this release are satisfied,

the State must immediately release the defendant. This is, again, mandatory, not

optional:

 [A]ny judicial official must effect the release of that person
 upon satisfying himself that the conditions of release have
 been met. In the absence of a judicial official, any law-
 enforcement officer or custodial official having the person
 in custody must effect the release upon satisfying himself
 that the conditions of release have been met . . . . Satisfying
 oneself whether conditions of release are met includes
 determining if sureties are sufficiently solvent to meet the
 bond obligation . . . .

Id. § 15A-537(a) (emphasis added).

 Unlike this first part of the bail statutes, which addresses many different

means by which a defendant can be released before trial, the second part of these

statutes deals exclusively with release under a bail bond and the forfeiture of that

bond. See id. § 15A-544.1 et seq. It contains a series of procedural requirements to

forfeit a bail bond, to request that a bond forfeiture be set aside, to enter a final

judgment of forfeiture, and to obtain relief from a final judgment of forfeiture. Id. But,

importantly, all of these forfeiture provisions turn on an initial precondition

established in the statute:

 (a) If a defendant who was released under Part 1 of this
 Article upon execution of a bail bond fails on any occasion
 to appear before the court as required, the court shall enter
 a forfeiture for the amount of that bail bond in favor of the
 State against the defendant and against each surety on the
 bail bond.

 -6-
 STATE V. LEMUS

 Opinion of the Court

Id. § 15A-544.3(a) (emphasis added).

 This case thus presents us with a straightforward but critical question of

statutory interpretation: what is the meaning of the term “released” in the bail

statutes? Our task in statutory construction is to “determine the meaning that the

legislature intended upon the statute’s enactment.” State v. Rankin, 371 N.C. 885,

889, 821 S.E.2d 787, 792 (2018). “The intent of the General Assembly may be found

first from the plain language of the statute, then from the legislative history, the

spirit of the act and what the act seeks to accomplish.” Id. But, if the statutory

language is “clear and unambiguous,” then the statutory analysis ends and the court

gives the words in the statute “their plain and definite meaning.” State v. Beck, 359

N.C. 611, 614, 614 S.E.2d 274, 277 (2005).

 We therefore begin with the plain language of the bail statutes and, in

particular, the meaning of the words “release” and “released” as they appear

throughout these statutes. There is a definitional section at the beginning of this

series of statutes, but it does not contain a definition of either “release” or “released.”

N.C. Gen. Stat. § 15A-531. Those words therefore “must be given their common and

ordinary meaning.” State v. Rieger, __ N.C. App. __, __, 833 S.E.2d 699, 701 (2019).

 The word “release” is defined as “[t]o set free from confinement, restraint, or

bondage” or “[a]n authoritative discharge, as from an obligation or from prison.”

Release, Webster’s II New College Dictionary (1995). Similarly, the term bail itself is

 -7-
 STATE V. LEMUS

 Opinion of the Court

understood as meaning a security given for the appearance of the accused to obtain

his release from confinement. 8A Am. Jur. 2d Bail & Recognizance § 1 (1997). Thus,

the ordinary understanding of the word release in this context is to be physically set

free from custody and confinement.

 Although this case presents a question of first impression, this plain-language

interpretation implicitly has been adopted in cases from this Court and our Supreme

Court that addressed the responsibilities of bail agents. Those cases emphasize that

release occurs when the State hands over custody of the defendant to the bail agent

and that, upon posting the bond, the physical custody of the defendant transfers from

the State to the bail agent. See, e.g., State v. Mathis, 349 N.C. 503, 509, 509 S.E.2d

155, 159 (1998); State v. Vikre, 86 N.C. App. 196, 199–200, 356 S.E.2d 802, 805 (1987).

 In addition, this plain-language interpretation explicitly has been adopted by

courts in other jurisdictions confronted with the issue raised in this case. For

example, the Colorado Court of Appeals held that a bond forfeiture was invalid

because “the defendant was not released into the legal custody of his surety. The

record shows that he was transferred directly from the Adams County Sheriff's

Department into the custody of the INS [the U.S. Immigration and Naturalization

Service].” People v. Gonzales, 745 P.2d 263, 264 (Colo. App. 1987). Thus, the court

reasoned, “because defendant was not released into the custody of his sureties, he

was not released within the meaning of § 16-4-109(2),” the Colorado statute governing

 -8-
 STATE V. LEMUS

 Opinion of the Court

the pretrial “release” of a defendant who posts a bond. Id. at 264–65.

 We agree with the Colorado Court of Appeals’ reasoning and interpretation of

the word “release.” Here, when Lemus and his surety satisfied the conditions placed

upon his release, and there was no other basis for the State to retain custody of

Lemus, the State was required to immediately effect his release. N.C. Gen. Stat.

§§ 15A-534, 15A-537. That didn’t happen. Instead, despite Lemus having posted the

required bond, the State continued to detain him, under an agreement with federal

immigration authorities, until federal agents could arrive. At that point, the State

transferred Lemus directly from State custody to federal custody. At no point was

Lemus set free, and thus, he was never “released” from the State’s custody.

 The school board responds to this argument in two ways: with procedural

arguments and with policy ones. First, the school board argues that Section 15A-

544.5 of the bail forfeiture statutes provides that there “shall be no relief from a

forfeiture except as provided in this section” and then lists a series of enumerated

grounds for relief. Id. § 15A-544.5(a)–(b). Similarly, the school board argues that

Section 15A-544.8, which governs relief from a final judgment of forfeiture, contains

an even narrower list of enumerated grounds for relief. Id. § 15A-544.8(a)–(b). Thus,

the school board argues, the trial court properly denied the surety’s request for relief

because none of the enumerated grounds for relief under either statute apply in this

case.

 -9-
 STATE V. LEMUS

 Opinion of the Court

 We reject this argument. All of the enumerated grounds for either setting aside

a forfeiture or granting relief from a forfeiture judgment—such as the underlying

charges being dropped, or the defendant being arrested and jailed somewhere else, or

the surety never receiving notice of the forfeiture—presuppose that the trial court

had statutory authority to enter a valid forfeiture to begin with. Id. §§ 15A-

544.5(b)(1)–(7), 15A-544.8(b). Here, the trial court did not have that authority. The

statutory authority to forfeit a bail bond exists only for a defendant “who was

released” and, as explained above, Lemus was never released. Id. § 15A-544.3(a).

Thus, the surety properly could move the trial court for relief from the forfeiture

judgment on the ground that the court had no legal authority to enter it at the outset.

 The school board also makes a series of policy arguments against this

interpretation. But in doing so, the board inadvertently underscores why its

arguments fail: although the school board indeed makes “policy” arguments, those

arguments have nothing to do with the policy underlying bail bond forfeiture, which

furthers the State’s interest in ensuring that criminal defendants released on bond

appear at their criminal trials.

 For example, much of the school board’s policy arguments focus on framing

Lemus’s surety as a bad actor, asserting that “the burden should not be on the State

to assist the surety in its own commercial enterprise.” But this argument is a giant

non sequitur. The surety’s actions have nothing to do with whether the State

 - 10 -
 STATE V. LEMUS

 Opinion of the Court

complied with the necessary precondition of a bond forfeiture—the obligation to

release the defendant.

 The school board also contends that this Court’s interpretation of the word

“release” would make it difficult, or impossible, for the State to cooperate with other

law enforcement agencies or governments seeking custody of a defendant. This is

simply wrong. Nothing prevents the State from alerting federal agencies, or law

enforcement in other states, or anyone else, of the time and place at which the State

will release a defendant who has satisfied the conditions of release. Even if a

defendant released on bond walks out of a county jail and is immediately taken into

custody by federal immigration authorities, that defendant was “released” under our

State’s bail statutes because he was set free from State custody.

 But in this scenario, many other people can be waiting outside that county jail

as well—most importantly, the defendant’s family or the bail agent. This, in turn,

permits the bail statutes to function as intended. The defendant’s family or bail agent

will know that some other government or agency detained the defendant for some

other reason. The family or bail agent then can take various steps established in the

statutes to keep track of the defendant’s whereabouts and status and, if necessary,

seek to change the conditions of pretrial release or terminate the bond obligation

altogether. See generally N.C. Gen. Stat. §§ 15A-534, 15A-538, 15A-544.5. The State

deprived Lemus, his family, and the surety of this opportunity by continuing to detain

 - 11 -
 STATE V. LEMUS

 Opinion of the Court

Lemus after he posted the bond and then handing him over to federal agents without

first releasing him.

 The school board next argues that this Court’s interpretation of the statute

would make it harder for undocumented immigrants to be released on bond. Again,

this is simply wrong. The State is required by law to set reasonable conditions of

pretrial release for every criminal defendant. Id. § 15A-533. If those conditions are

satisfied, the State must release the defendant. Our opinion has no impact on this

mandatory statutory process.

 Finally, we note that our interpretation is fully consistent with the actual

policy underlying our bond statutes—to protect the State’s interest in releasing

criminal defendants before trial while ensuring that those defendants return to court

for their criminal proceedings. Vikre, 86 N.C. App. at 199, 356 S.E.2d at 804; State v.

Robinson, 145 N.C. App. 658, 661, 551 S.E.2d 460, 462 (2001). Here, the State had no

interest in Lemus appearing at his criminal trial in North Carolina anymore. We

know this because it was the State that chose to hand Lemus over to federal

immigration authorities so that he could be permanently deported from the United

States, making it impossible for him to appear at a state criminal trial. And, even

after those federal authorities offered the State an opportunity to bring Lemus back

to North Carolina for trial, the State declined to take it.

 Simply put, this was never a case in which the $100,000 secured bond served

 - 12 -
 STATE V. LEMUS

 Opinion of the Court

any purpose other than to exploit Lemus and his family. After all, as the parties

acknowledged at oral argument, these bail bonds require a large up-front premium

by the defendant (or, frequently, the defendant’s family). These bail bonds also often

require that the defendant or family members offer up other property as collateral or

agree to be liable for the bond amount if it is forfeited. So in a case like this one, where

the State turned the defendant over to the federal government for deportation with

no intention of actually trying the defendant for the alleged crimes, the bail bond

functions only as a tax on undocumented immigrants and their families—often

among the poorest and most vulnerable people in our State. It is exceedingly rare for

this Court to ignore a statute’s plain language, even if we felt it would produce a

better outcome. We certainly will not do so here, where departure from the plain

language victimizes some of the most marginalized people of our State.

 In sum, we hold that the bond forfeiture statutes, by their plain terms, apply

only to “a defendant who was released.” N.C. Gen. Stat § 15A-544.3. Lemus satisfied

the conditions set by the trial court for his release, but he was not released. Instead,

the State continued to detain him, despite the bond he posted, until he could be

transferred to the custody of federal immigration authorities for deportation. Because

the State never released Lemus, the trial court erred by entering a bond forfeiture

and further erred by declining to set that forfeiture aside. We therefore reverse the

trial court’s order.

 - 13 -
 STATE V. LEMUS

 Opinion of the Court

 Conclusion

 For the reasons stated above, we reverse the trial court’s order and remand

with instructions to grant relief from the final forfeiture judgment.

 REVERSED AND REMANDED.

 Judges STROUD and HAMPSON concur.

 - 14 -