IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-271

No. COA20-496

Filed 15 June 2021

Union County, No. 17 CRS 53859

STATE OF NORTH CAROLINA

v.

AMY REGINA ATWELL

Appeal by defendant from judgment entered on 29 January 2020 by Judge Jeffery K. Carpenter in Union County Superior Court. Heard in the Court of Appeals 13 April 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General David D. Lennon, for the State.*

*W. Michael Spivey for the Defendant.*

ARROWOOD, Judge.

¶ 1    Amy Regina Atwell ("defendant") appeals from judgment entered upon a jury verdict finding her guilty of attempting to purchase a firearm while subject to a domestic violence protective order ("DVPO") prohibiting the same, a violation of N.C. Gen. Stat. § 14-269.8. Defendant contends that the indictment charging her with this crime was fatally defective and that the trial court erred in concluding that she had

- 1 -

forfeited her right to counsel. For the following reasons, we affirm the trial court.

## I. Background

On 9 August 2013, Judge Hunt Gwyn entered an *ex parte* DVPO against defendant in Union County District Court. The order required that defendant "surrender to the Sheriff . . . [any] firearms, ammunition, and gun permits . . . in [her] . . . ownership or control." The order further provided that failing to surrender her firearms or "possessing, purchasing, or receiving a firearm, ammunition or permits to purchase or carry concealed firearms . . . is a crime." The order also stated in a portion captioned, "Notice to Parties," as follows:

> TO THE DEFENDANT:
>
> 1. If this Order prohibits you from possessing, receiving or purchasing a firearm and you violate or attempt to violate that provision, you may be charged with a Class H felony pursuant to North Carolina G.S. 14-269.8 and may be imprisoned for up to 30 months.
>
> 2. If you have been ordered to surrender firearms, ammunition, and gun permits and you fail to surrender them as required by this Order, or if you failed to disclose to the Court all information requested about possession of these items or provide false information about any of these items you may be charged with a Class H felony and may be imprisoned for up to 30 months.

The DVPO was renewed annually and was in effect on 9 August 2017 when defendant unsuccessfully attempted to purchase a .22 caliber rifle at the Tennessee Kentucky Pawn in Scott County, Tennessee. A warrant was issued for her arrest on

10 August 2017. On 5 February 2018, defendant was indicted by a Union County grand jury with attempting to purchase a firearm while subject to a DVPO prohibiting the same.

¶ 4 The case was continued twice and came on for hearing on 18 September 2019 in Union County Superior Court, the Honorable William A. Wood presiding. At the 18 September 2019 hearing, defendant appeared without representation after her fifth attorney had withdrawn. Defendant's case had been continued to allow time for defendant to hire an attorney. When the trial court asked defendant what she was "going to do about a lawyer[,]" defendant explained that she could not afford a lawyer and wanted another court appointed attorney. Judge Wood responded:

> THE COURT: Well, quite frankly I've never seen a file like this as far as your attorney situation goes. This all started back in August 19, 2017, which is the date of offense in these charges. And it looks like you got indicted in February of 2018, a year and a half ago, and were appointed an attorney who you promptly fired on February 12th, 2018. Then you waived your right to a court appointed lawyer. I believe you signed another waiver of your right to a court appointed lawyer. Those were on April 17th, 2018 and May 15th, 2018. You were given a continuance on June the 12th at your own request and then you were appointed another attorney on September the 11th, 2018 who withdrew from your case, it doesn't really say why in the file. You filed another waiver on October 11th, 2018. You were appointed another attorney on December the 13th, 2018 who you promptly fired in June of 2019. And then you signed another waiver and asked for a continuance to hire your own lawyer. Don't you think it's gone on long enough?

¶ 5        Defendant reiterated that she could not afford a lawyer on the date of the hearing and had asked for a continuance due to her disability and low income. When Judge Wood asked why defendant had fired her prior attorneys, defendant explained that one had withdrawn due to a conflict of interest, and "two other attorneys were totally going in two different ways of defense[,]" such that defendant did not feel that the attorneys represented her interests.

¶ 6        The trial court next asked the State "what's your pleasure with this case[?]" The State responded that they were "ready to move forward with the case at this point[,]" that the case "just needs to be arraigned and we'll move it to a trial calendar[,]" while defendant could "still possibly retain[ ] counsel if she chooses to do so."

¶ 7        The following colloquy then transpired:

> THE COURT: Well, what I'm going to do is I'm going to put an order in the file basically saying you waived your right to have an attorney. If you would like to hire your own attorney, that will be fine, but based on these – the history of this file, it appears to me that your process in moving this case along has been nothing more than to see how long you can delay it until it goes away. The way you've behaved appears to be nothing more than a delay tactic and that's what I'm going to put an order in the file and I'm going to make specific findings as to everything I just told you and to some other things that are in the file. I'm going to let the prosecutor arraign you and set this case for trial. Do you understand that?
>
> THE DEFENDANT: Yes.

THE COURT: Now, that doesn't preclude you from hiring your own attorney. You can hire your own attorney but you're going to have to do that and have your attorney ready by the time the prosecutor has this case on the trial calendar. Additionally, if you don't hire an attorney, you're going to be responsible for representing yourself. Do you know what that means?

THE DEFENDANT: Representing myself.

THE COURT: Yes.

THE DEFENDANT: It means representing myself.

THE COURT: It does. It means you're going to have to negotiate any plea deal if there is one with the prosecutor. You're going to have to handle all the Discovery in this case. If there is a jury trial you're going to have to select a jury and keep up with any motions and try the case just as if you were an attorney and be held to the same standard as an attorney. You're not going to get legal advice from me or whoever the judge is. Do you understand that?

THE DEFENDANT: No, because I've already requested a jury trial.

THE COURT: Well what is it about that that you don't understand?

THE DEFENDANT: You said if I get a jury trial.

THE COURT: You're welcome – I mean, nobody's going to make you plead guilty. You can have a jury trial.

THE DEFENDANT: Thank you.

THE COURT: There's other ways for a case to go away. Do you understand that?

THE DEFENDANT: Okay.

THE COURT: I don't know what's ultimately going to have happen to this case but you are entitled to a jury trial most definitely. What I want you to understand is that if you represent yourself, you're going to be held to the same standards of an attorney. Do you understand that?

THE DEFENDANT: You're giving me no choice. I mean, I asked for another court appointed attorney and you said no, so –

THE COURT: You've had choice after choice after choice. You've been given a court appointed attorney on three[1] occasions, which is two more than you usually get.

THE DEFENDANT: I've got the e-mails from one of the lawyers that was actually giving me wrong court dates to be in court.

THE COURT: Well, one of the attorneys there is no indication as to why that attorney withdrew, the other took – you took them off the case, basically. So do you understand what's going on here, ma'am?

THE DEFENDANT: You've denied me a court appointed attorney. Yes, I understand that.

THE COURT: I've denied you a fourth court appointed attorney.

THE DEFENDANT: I understand that, yes.

Judge Wood concluded in a 20 September 2019 order that defendant had forfeited her right to counsel.

The case came on for trial before the Honorable Jeffrey K. Carpenter on

---

[1] As Judge Wood's 20 September 2019 order reflects, the correct number at that point was five.

13 January 2020. Defendant was present during the first two days of trial, but on the second day, disappeared. On 14 January 2020, the court recessed for lunch at 12:16 p.m. and reconvened at 2:01 p.m. but defendant never returned from the lunch break. The court then recessed for the day and issued an order for defendant's arrest.

The following morning, defendant did not appear, and the trial court decided to proceed in her absence. Due to Judge Wood's conclusion that defendant had forfeited her right to counsel, neither defendant nor her counsel were present for the remainder of the trial, which took place over the course of the third day. At the conclusion of the trial, the jury found defendant guilty.

Defendant was located about two weeks later. On 28 January 2020, the trial court sentenced her to a term of 5 to 15 months in prison. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant contends that the indictment charging her with this crime was fatally defective and that the trial court erred in concluding that she had forfeited her right to counsel. We disagree.

## A. Validity of Indictment

"[A] valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." *State v. Campbell*, 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (quoting *State v. Sturdivant,* 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981)).

A valid indictment, among other things, serves to "identify the offense" being charged with certainty, to "enable the accused to prepare for trial," and to "enable the court, upon conviction, to pronounce the sentence." *State v. Rankin*, 371 N.C. 885, 886, 821 S.E.2d 787, 790 (2018) (citing *State v. Saults*, 294 N.C. 722, 726, 242 S.E.2d 801, 805 (1978)).

¶ 13        A sufficient indictment must include "[a] plain and concise factual statement" asserting "facts supporting every element of a criminal offense and the defendant's commission thereof." N.C. Gen. Stat. § 15A-924(a)(5) (2019). If the indictment fails to state an essential element of the offense, any resulting conviction must be vacated. *See, e.g.*, *Campbell*, 368 N.C. at 86, 772 S.E.2d at 443; *see also State v. Wagner*, 356 N.C. 599, 601, 572 S.E.2d 777, 779 (2002) (per curiam). The law disfavors application of rigid and technical rules to indictments; so long as an indictment adequately expresses the charge against the defendant, it will not be quashed. *See State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981).

¶ 14        In *State v. Mostafavi*, the defendant argued that the indictment charging him with obtaining property by false pretenses omitted an essential element of the crime because it failed to allege the precise amount of money the defendant received when he pawned the property obtained. 370 N.C. 681, 683, 811 S.E.2d 138, 140 (2018). Our Supreme Court held that the indictment was facially valid because it clearly identified "the conduct which [was] the subject of the accusation" by alleging that the

defendant received United States currency by pawning stolen property as if it were his own. *Id.* at 687, 811 S.E.2d at 142 (quoting N.C. Gen. Stat. § 15A-924(a)(5)).

¶ 15 Here, the indictment charged that defendant "willfully and feloniously did attempt to purchase a firearm, as defined in [N.C. Gen. Stat. §] 14-409.39(2), knowing that a protective order was entered against her, pursuant to Chapter 50B of the General Statutes and was in effect at the time she attempted to purchase the firearm." The indictment specifically references the attempt to purchase a firearm, the existence of a protective order against defendant, and that the order "was in effect at the time she attempted to purchase the firearm." The indictment adequately expressed the charge against defendant within a reasonable certainty to enable defendant to prepare for trial and for the court to pronounce the sentence. Accordingly, we hold that the indictment was valid.

## B.     Forfeiture of Right to Counsel

¶ 16 "A criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution." *State v. Blakeney*, 245 N.C. App. 452, 459, 782 S.E.2d 88, 93 (2016) (citations omitted). "This includes the right of indigent defendants to be represented by appointed counsel." *State v. Harvin*, 268 N.C. App. 572, 590, 836 S.E.2d 899, 909 (2019) (citation omitted).

¶ 17 There are several circumstances where an indigent defendant may lose the

right to appointed counsel. *State v. Curlee*, 251 N.C. App. 249, 252, 795 S.E.2d 266, 269 (2016) (citation omitted). The first is waiver of the right to counsel, which must be made knowingly, intelligently, and voluntarily. *Id.* at 253, 795 S.E.2d at 269 (citation omitted). Once given, "a waiver of counsel is good and sufficient until the proceedings are terminated or until the defendant makes known to the court" that they desire to withdraw the waiver and have counsel appointed. *Id.* (citation omitted). The burden of establishing a change of desire for the assistance of counsel rests upon the defendant. *Id.* (citation omitted).

Additionally, a defendant may forfeit the right to counsel "in situations evincing egregious misconduct by a defendant[.]" *State v. Simpkins*, 373 N.C. 530, 535, 838 S.E.2d 439, 446 (2020). This conduct must be "egregious dilatory or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel." *Id.* at 541, 838 S.E.2d at 449. "There is no bright-line definition of the degree of misconduct that would justify forfeiture of a defendant's right to counsel[,]" but forfeiture has been found in cases where the defendant engaged in

> (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal "rights."

*Blakeney*, 245 N.C. App. at 461-62, 782 S.E.2d at 94 (referencing several published

cases concerning forfeiture of the right to counsel).

¶ 19 In *Simpkins*, our Supreme Court discussed various categories of conduct sufficient to constitute forfeiture, including where "the defendant is attempting to obstruct the proceedings and prevent them from coming to completion." *Simpkins,* 373 N.C. at 538, 838 S.E.2d at 447. Regarding obstruction, the Court included examples such as a defendant who "refuses to obtain counsel after multiple opportunities to do so, refuses to say whether he or she wishes to proceed with counsel, refuses to participate in the proceedings, or continually hires and fires counsel and significantly delays the proceedings[.]" *Id.* In these circumstances, the obstructionist actions must "completely undermine the purposes of the right to counsel." *Id.* If the defendant's actions also prevent the trial court from fulfilling the mandated inquiries of N.C. Gen. Stat. § 15A-1242, "the defendant has forfeited his or her right to counsel and the trial court is not required to abide by the statute's directive to engage in a colloquy regarding a knowing waiver." *Id.*

¶ 20 "Another situation that arises with some frequency in criminal cases is that of the defendant who waives the appointment of counsel and whose case is continued in order to allow [them] time to obtain funds with which to retain counsel." *Curlee*, 251 N.C. App. at 253, 795 S.E.2d at 270. A defendant's case may be continued several times before the defendant realizes they cannot afford to hire an attorney, which may cause judges and prosecutors to be "understandably reluctant to agree to further

delay of the proceedings," or to "suspect that the defendant knew that [they] would be unable to hire a lawyer and was simply trying to delay the trial." *Id.* In such a situation, the trial court must inform the defendant that, if they do not want to be represented by appointed counsel and are unable to hire an attorney by the scheduled trial date, they "will be required to proceed to trial without the assistance of counsel, *provided that* the trial court informs the defendant of the consequences of proceeding *pro se* and conducts the inquiry required by N.C. Gen. Stat. § 15A-1242." *Id.* (emphasis in original).

¶ 21        Under N.C. Gen. Stat. § 15A-1242, "a defendant must be advised of the right to counsel, the consequences of proceeding without counsel, and 'the nature of the charges and proceedings and the range of permissible punishments' before the defendant can proceed without counsel." *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449 (quoting N.C. Gen. Stat. § 15A-1242 (2019)). "The record must affirmatively show that the inquiry was made and that the defendant, by [their] answers, was literate, competent, understood the consequences of [their] waiver, and voluntarily exercised [their] own free will." *State v. Pena*, 257 N.C. App. 195, 204, 809 S.E.2d 1, 7 (2017) (citation omitted). "A trial court's failure to conduct [this] inquiry entitles [the] defendant to a new trial." *State v. Seymore*, 214 N.C. App. 547, 549, 714 S.E.2d 499, 501 (2011). A trial court is only relieved of its obligation to conduct the colloquy required by N.C. Gen. Stat. § 15A-1242 when the defendant's conduct makes doing so

impossible. *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449.

¶ 22 The transcript of the 18 September 2019 hearing demonstrates that the court determined this case to be one of the situations contemplated in *Curlee*. Accordingly, defendant was "required to proceed to trial without the assistance of counsel, *provided that* the trial court inform[ed] the defendant of the consequences of proceeding *pro se* and conduct[ed] the inquiry required by N.C. Gen. Stat. § 15A-1242." *Curlee*, 251 N.C. App. at 253, 795 S.E.2d at 270.

¶ 23 For the trial court's inquiry to satisfy the requirements of N.C. Gen. Stat. § 15A-1242, the trial court was required to advise defendant of the right to counsel, the consequences of proceeding without counsel, and "the nature of the charges and proceedings and the range of permissible punishments" before defendant could proceed without counsel. *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449 (quoting N.C. Gen. Stat. § 15A-1242 (2019)). Here, defendant was clearly advised of the right to counsel, as she had already been represented by several court appointed attorneys and had entered and withdrawn multiple waivers of the right to counsel. The trial court also reiterated that the order "doesn't preclude you from hiring your own attorney." With respect to the consequences of proceeding *pro se*, the trial court informed defendant that she would be responsible for negotiating any plea deal with the prosecutor, proceeding with discovery, jury selection, and any motions and trial, and that she would be "held to the same standard as an attorney." This portion of

the colloquy also informed defendant of the nature of the proceedings and the range of permissible punishments. Therefore, we hold that the colloquy was sufficient. Because we hold that the colloquy was sufficient for the purposes of N.C. Gen. Stat. § 15A-1242, we further hold that the trial court's order that defendant had "forfeited or effectively waived her right to be represented by counsel in this matter" was appropriate and not violative of the standards set out in *Simpkins*.

¶ 24        Assuming *arguendo* that the trial court's colloquy was insufficient for the purposes of N.C. Gen. Stat. § 15A-1242 and that an effective waiver did not occur, we hold that defendant forfeited the right to counsel. Although there is no bright-line definition on the degree of misconduct to justify forfeiture, several of the types of conduct contemplated in *Blakeney* and *Simpkins* occurred in this case. Defendant repeatedly fired appointed counsel, often within several days of their appointment. Defendant continued to alternatively seek appointed counsel or additional time to hire an attorney while filing and withdrawing multiple waivers of the right to appointed counsel.[2] Under these circumstances, defendant's actions completely frustrated the purpose of the right to counsel and prevented the trial court from moving the case forward. Accordingly, we hold that the trial court's finding that

---

[2] Although our courts have not directly considered the effect of multiple filed and withdrawn waivers of the right to appointed counsel in the context of forfeiture, we view this conduct as analogous to repeated firing of appointed counsel and consider this conduct in determining whether a defendant is engaged in "flagrant or extended delaying tactics."

defendant forfeited the right to appointed counsel was warranted.

## III.    Conclusion

For the forgoing reasons, we hold the indictment was facially valid and the trial court did not err in concluding that defendant had forfeited her right to appointed counsel.

AFFIRMED.

Chief Judge STROUD concurs.

Judge JACKSON concurs in part and dissents in part.

JACKSON, Judge, concurring in part and dissenting in part.

I join the portion of the majority's opinion holding that the indictment charging Amy Regina Atwell ("Defendant") with attempting to purchase a firearm while subject to a domestic violence protective order prohibiting the same is facially valid. However, I respectfully dissent from the portion of the majority opinion holding that Defendant waived the right to counsel, or in the alternative, forfeited it.

North Carolina General Statute § 15A-1242 provides:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2019). Our Supreme Court has held that trial courts are only relieved of the obligation to conduct the colloquy required by N.C. Gen. Stat. § 15A-1242 "in situations evincing egregious misconduct by a defendant[,]" *State v. Simpkins*, 373 N.C. 530, 535, 838 S.E.2d 439, 446 (2020), where the "defendant may be deemed to have forfeited the right to counsel because . . . the defendant has totally

frustrated that right[,]" *id.* at 536, 838 S.E.2d at 446. "[A]bsent egregious conduct by the defendant, a defendant must be advised of the right to counsel, the consequences of proceeding without counsel, and 'the nature of the charges and proceedings and the range of permissible punishments' before the defendant can proceed without counsel." *Id.* at 541, 838 S.E.2d at 449 (quoting N.C. Gen. Stat. § 15A-1242).

¶ 28    Neither the trial court, nor Judge William A. Wood—who presided over a pretrial hearing on 18 September 2019—completed the colloquy required by N.C. Gen. Stat. § 15A-1242. Instead, Judge Wood concluded in a 20 September 2019 order that Defendant had forfeited the right to counsel. However, the record before us does not support Judge Wood's forfeiture conclusion. The majority erroneously concludes that Judge Wood's colloquy with Defendant on 18 September 2019 "was sufficient for purposes of the statute[,]" *State v. Atwell, supra* at ___, or alternatively, "that [D]efendant forfeited the right to counsel[,]" *id.* at ___. I disagree, and therefore respectfully dissent.

## I.    Standard of Review

> The right to counsel in a criminal proceeding is protected by both the federal and state constitutions. Our review is *de novo* in cases implicating constitutional rights. Accordingly, we review *de novo* a trial court's determination that a defendant has either waived or forfeited the right to counsel.

*Simpkins*, 373 N.C. at 533, 838 S.E.2d at 444 (internal marks and citation omitted).

## II.    Waiver

As our Court has previously observed, the requirements of N.C. Gen. Stat. § 15A-1242 "are clear and unambiguous." *State v. Callahan*, 83 N.C. App. 323, 324, 350 S.E.2d 128, 129 (1986). "The inquiry is mandatory and must be made in every case in which a defendant elects to proceed without counsel[,]" *id.* (citation omitted), unless the defendant "forfeit[s] the right to counsel . . . and prevents the trial court from complying with N.C.G.S. § 15A-1242[,]" *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449. In the case of a valid waiver, "[t]he record must affirmatively show that the inquiry was made and that the defendant, by his answers, was literate, competent, understood the consequences of his waiver, and voluntarily exercised his own free will." *Callahan*, 83 N.C. App. at 324, 350 S.E.2d at 129 (citation omitted). "The purpose of the colloquy required by N.C. Gen. Stat. § 15A-1242 is to comply with the constitutional requirement that a waiver of the right to counsel be made 'knowingly, intelligently, and voluntarily.'" *State v. Harvin*, 268 N.C. App. 572, 593, 836 S.E.2d 899, 911 (2019) (quoting *State v. Blakeney*, 245 N.C. App. 452, 459-60, 782 S.E.2d 88, 93 (2016)).

The record of the 18 September 2019 hearing demonstrates not only that Defendant did *not* wish to proceed without counsel—Defendant requested that another attorney be appointed to represent her, not that she be allowed to proceed pro se—but also that Defendant did not waive her constitutional right to counsel

*JACKSON, J., concurring in part and dissenting in part.*

"knowingly, intelligently, and voluntarily[.]" *Blakeney*, 245 N.C. App. at 459, 782 S.E.2d at 93. Judge Wood asked her, "What are you going to do about a lawyer?" She replied, "I can't afford to get a lawyer and still pay my rent and the living expenses. I thought one would take payments from me, but they won't. So at this time I would like to get another court appointed attorney." Judge Wood then summarized what he saw in the file related to the appointment of the attorneys that had withdrawn, whereupon Defendant explained, "I asked for a six month's continuance because I'm disabled and I'm low income. I knew that I would need at least a couple months. I can't pay my rent and my living expenses plus pay a lawyer in four weeks." Judge Wood responded, "Well I can see at least two occasions, perhaps three you've requested a court appointed attorney and you've promptly fired that lawyer." Defendant replied:

> Two of them, yeah, for valid, valid reasons. And one of them that I had personal – that was taking payments for four months. The fourth month he up and said there was a conflict with another client, Vernon Clauser (ph). I don't know what the conflict is. I don't have any proceedings with him. And he said that I hadn't paid him. He was taking payments from me every month for four months. So that set me back for a while. And then this – the two other attorneys were totally going in two different ways of defense. Just to me they seemed like they were more on the Plaintiff's side than mine. I don't need an attorney like that. I've asked for a jury trial. I mean, I haven't seen anything filed. I did see where Peter Dwyer seemed to do the best work, in my opinion, because he did file for an arraignment back in June of 2018. He did file a motion for

Discovery. I mean, he seems to be the most – I regret letting him go, but – just put it that way.

Judge Wood then asked the prosecutor, "Mr. [Prosecutor], what's your pleasure with this case, sir?" The prosecutor explained that Defendant had been offered to plead as charged and serve probation but that she had declined, and the State was ready to proceed. The following colloquy then transpired:

> THE COURT: Well, what I'm going to do is I'm going to put an order in the file basically saying you waived your right to have an attorney. If you would like to hire your own attorney, that will be fine, but based on these – the history of this file, it appears to me that your process in moving this case along has been nothing more than to see how long you can delay it until it goes away. The way you've behaved appears to be nothing more than a delay tactic and that's what I'm going to put an order in the file and I'm going to make specific findings as to everything I just told you and to some other things that are in the file. I'm going to let the prosecutor arraign you and set this case for trial. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, that doesn't preclude you from hiring your own attorney. You can hire your own attorney but you're going to have to do that and have your attorney ready by the time the prosecutor has this case on the trial calendar. Additionally, if you don't hire an attorney, you're going to be responsible for representing yourself. Do you know what that means?
>
> THE DEFENDANT: Representing myself.
>
> THE COURT: Yes.
>
> THE DEFENDANT: It means representing myself.

*JACKSON, J., concurring in part and dissenting in part.*

THE COURT: It does. It means you're going to have to negotiate any plea deal if there is one with the prosecutor. You're going to have to handle all the Discovery in this case. If there is a jury trial you're going to have to select a jury and keep up with any motions and try the case just as if you were an attorney and be held to the same standard as an attorney. You're not going to get legal advice from me or whoever the judge is. Do you understand that?

THE DEFENDANT: No, because I've already requested a jury trial.

THE COURT: Well what is it about that that you don't understand?

THE DEFENDANT: You said if I get a jury trial.

THE COURT: You're welcome – I mean, nobody's going to make you plead guilty. You can have a jury trial.

THE DEFENDANT: Thank you.

THE COURT: There's other ways for a case to go away. Do you understand that?

THE DEFENDANT: Okay.

THE COURT: I don't know what's ultimately going to have happen to this case [sic] but you are entitled to a jury trial most definitely. What I want you to understand is that if you represent yourself, you're going to be held to the same standards of an attorney. Do you understand that?

THE DEFENDANT: You're giving me no choice. I mean, I asked for another court appointed attorney and you said no, so –

THE COURT: You've had choice after choice after choice. You've been given a court appointed attorney on three[3]

---

[3] As the majority notes, the correct number at that point was five.

occasions, which is two more than you usually get.

THE DEFENDANT: I've got the e-mails from one of the lawyers that was actually giving me wrong court dates to be in court.

THE COURT: Well, one of the attorneys there is no indication as to why that attorney withdrew, the other took – you took them off the case, basically. So do you understand what's going on here, ma'am?

THE DEFENDANT: You've denied me a court appointed attorney. Yes, I understand that.

THE COURT: I've denied you a fourth court appointed attorney.

THE DEFENDANT: I understand that, yes.

¶ 32     The record of the 18 September 2019 hearing thus shows that Judge Wood

attempted to conduct the colloquy required by N.C. Gen. Stat. § 15A-1242 but did not

complete it. It does *not* "show that . . . [D]efendant . . . understood the consequences

of h[er] waiver, and voluntarily exercised h[er] own free will." *Callahan*, 83 N.C. App.

at 324, 350 S.E.2d at 129. Instead, when Judge Wood asked Defendant whether she

understood "that if you represent yourself, you're going to be held to the same

standards of an attorney[,]" Defendant replied, "You're giving me no choice. I mean,

I asked for another court appointed attorney and you said no[.]" Any purported

waiver resulting from the 18 September 2019 hearing was not knowing, intelligent,

and voluntary. *See Blakeney*, 245 N.C. App. at 459-60, 782 S.E.2d at 93. Accordingly,

I would hold that the colloquy between Judge Wood and Defendant on 18 September

2019 did not suffice for purposes of N.C. Gen. Stat. § 15A-1242 because Judge Wood

did not complete the colloquy, and the colloquy that did occur demonstrates that any

purported waiver resulting from the hearing was not knowing, intelligent, and

voluntary. *See id.*

The majority asserts that this case is similar to a situation we described in

*State v. Curlee*, 251 N.C. App. 249, 795 S.E.2d 266 (2016), where a

> defendant [] waives the appointment of counsel and [the]
> case is continued . . . [and] [b]y the time [] [the] defendant
> realizes that he cannot afford to hire an attorney, . . .
> judges and prosecutors are understandably reluctant to
> agree to further delay of the proceedings, or may suspect
> that the defendant knew that he would be unable to hire a
> lawyer and was simply trying to delay the trial.

*Id.* at 253, 795 S.E.2d at 270. In *Curlee*, we described a prophylactic measure a trial

court could employ to prevent a delay of proceedings because of a defendant's failure

to fully appreciate the cost of retaining private counsel and any associated logistical

challenges that might present themselves until after some unsuccessful attempts to

retain counsel had been made by a defendant:

> It is not improper in such a situation for the trial court to
> inform the defendant that, if he does not want to be
> represented by appointed counsel and is unable to hire an
> attorney by the scheduled trial date, he will be required to
> proceed to trial without the assistance of counsel, *provided
> that* the trial court informs the defendant of the
> consequences of proceeding *pro se* and conducts the inquiry
> required by N.C. Gen. Stat. § 15A-1242.

*Id.* (emphasis in original).

I believe the majority's comparison of this case to the situation described in *Curlee* is inapt for two reasons: (1) the procedure described in *Curlee* requires that "the trial court inform[] the defendant of the consequences of proceeding *pro se* and conduct[] the inquiry required by N.C. Gen. Stat. § 15A-1242[,]" *id.*, which did not happen here; (2) the procedure described in *Curlee* is to be used by trial courts when the defendant "*does not want to be represented by appointed counsel* and is unable to hire an attorney[,]" *id.* (emphasis added). It is clear from the record of the 18 September 2019 hearing that Defendant wanted to be represented by counsel—to that end, she requested the appointment of counsel because she could not afford to retain counsel. When Judge Wood asked Defendant what she was going to do about a lawyer, for example, she replied that she could not "afford to get a lawyer and still pay [her] rent and [] living expenses[,]" and requested that he appoint her counsel.

Without offering explanation or citing support in the record, the majority asserts that Judge Wood "determined this case to be one of the situations contemplated in *Curlee*." *State v. Atwell*, *supra* at ___. This unsupported assertion is belied by the transcript of the hearing before Judge Wood on 18 September 2019, as the portions of the transcript reproduced above reveal. The import of *Curlee* in this case is not that this case is an example of the successful use of the prophylactic measure we described in *Curlee*, but instead that *Curlee* outlines a procedure trial

judges can employ in situations like the one that faced Judge Wood on 18 September 2019, provided, however, that the defendant (1) "does not want to be represented by appointed counsel and is unable to hire an attorney by the scheduled trial date"; and (2) "the trial court informs the defendant of the consequences of proceeding *pro se* and conducts the inquiry required by N.C. Gen. Stat. § 15A-1242." *Curlee*, 251 N.C. App. at 253, 795 S.E.2d at 270. I would therefore hold that the situation described in *Curlee* is distinguishable.

### III.    Forfeiture

¶ 36        In *Simpkins*, our Supreme Court held for the first time that "a defendant may be deemed to have forfeited the right to counsel because, by his or her own actions, the defendant has totally frustrated that right." 373 N.C. at 536, 838 S.E.2d at 446. Our Court has since recognized that in *Simpkins*, "[t]he Supreme Court synthesized our precedent and announced the test to apply in forfeiture cases: 'A finding that a defendant has forfeited the right to counsel requires egregious dilatory or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel.'" *State v. Patterson*, 846 S.E.2d 814, 818 (N.C. Ct. App. 2020) (quoting *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449). "Importantly, the Supreme Court rejected this Court's precedent holding that 'willful actions on the part of the defendant that result in the absence of defense counsel,' standing alone, can support forfeiture." *Id.* (quoting *Simpkins*, 373 N.C. at 539, 838 S.E.2d at 448).

¶ 37    The forfeiture conclusion in Judge Wood's order does not meet the *Simpkins* standard.  Defendant's conduct, like Mr. Simpkins's conduct, "while probably highly frustrating, was not so egregious that it frustrated the purposes of the right to counsel itself." *Simpkins*, 373 N.C. at 539, 838 S.E.2d at 448.  Nothing in the record indicates how many times the State continued the case or was not ready to proceed.  In fact, the State waited almost six months from charging Defendant to secure an indictment.  Further, nothing in the record indicates that any of the lawyers who had previously represented Defendant withdrew because Defendant was refusing to *participate* in preparing a defense.  We also do not know why several of the attorneys withdrew, other than one having a conflict with another client according to Defendant.  Instead, to the extent it discloses any information on the subject, the record tends to show that Defendant had differences with her prior lawyers related to the preparation of her defense and defense strategy.  For example, her differences with her first lawyer appear to have been related to a jurisdictional argument she raised in a pro se motion filed on 8 May 2018 regarding the subject matter jurisdiction of Union County Superior Court over a crime she committed in Tennessee while residing in Tennessee—an argument that does not appear to have ever been addressed below and is not patently frivolous.

¶ 38    The American Bar Association has put forth standards for conduct of attorneys for over 50 years.  These standards have been cited in hundreds of court opinions,

including at least 120 United States Supreme Court opinions. In particular, Standard 4-5.2 entitled "Control and Direction of the Case" provides:

> Certain decisions relating to the conduct of the case are for the accused; others are for defense counsel. Determining whether a decision is ultimately to be made by the client or by counsel is highly contextual, and counsel should give great weight to strongly held views of a competent client regarding decisions of all kinds.

ABA Standards for Criminal Justice 4-5.2 (4th ed. 2017) ("The Defense Function"). The record before this Court contains no reasons for the withdrawal of counsel other than that Defendant had some strongly held views that she did not wish to plead guilty in exchange for probation and that she wanted to challenge some jurisdictional elements of the State's case. Defendant's strongly held views about the case were not a basis for concluding that she forfeited the right to counsel because she did not engage in any "egregious dilatory or abusive conduct . . . [that] undermine[d] the purposes of the right to counsel and prevent[ed] the trial court from complying with N.C.G.S. § 15A-1242." *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449.

Further, nothing in the record indicates that Defendant mistreated her prior attorneys by physically assaulting them or even by being verbally abusive. The defendant in *Simpkins* refused to acknowledge the authority of the court. *Id.* at 539, 838 S.E.2d at 448. He refused to answer the trial court's questions and posed his own repeated questions to the court. *Id.* He spoke out of turn and challenged the court

with extraneous statements. *Id.*

¶ 40 The transcript of the 18 September 2019 hearing before Judge Wood demonstrates that Defendant was polite at the hearing. When in court, Defendant normally answered questions appropriately, even saying yes sir or no sir to the court on occasion. The only instance in the record of Defendant being less than courteous toward the court is in the transcript of the day of her sentencing, over three months after Judge Wood entered his order regarding forfeiture. Defendant's requests for the court to appoint her a sixth lawyer and for a third continuance on 18 September 2019 did not "totally frustrat[e] the ability of the trial court to reach an outcome[.]" *Id.* at 536, 838 S.E.2d at 446. In fact, if the court had simply appointed her an attorney at that point, counsel would have had over three months to prepare for the trial of the matter without the need for further continuance.

¶ 41 While the majority's assertion that Judge Wood "determined this case to be one of the situations contemplated in *Curlee*[,]" *State v. Atwell, supra* at ___, is unsupported by the record, Defendant's history of requesting continuances and the appointment of new counsel is certainly reminiscent of the situation described in *Curlee*: "[D]efendant [] waive[d] the appointment of counsel and [her] case [was] continued in order to allow [her] time to obtain funds with which to retain counsel." 251 N.C. App. at 253, 795 S.E.2d at 270. "By the time . . . [she] realize[d] that [she] [could] []not afford to hire an attorney, [her] case [] ha[d] been continued" twice. *Id.*

*JACKSON, J., concurring in part and dissenting in part.*

"At that point, [the] judge[] and prosecutor[] [were] understandably reluctant to agree to further delay of the proceedings, or may [have] suspect[ed] that [] [D]efendant knew that [she] would be unable to hire a lawyer and was simply trying to delay the trial." *Id.* However, nothing in the record indicates that Judge Wood or any other judge presiding over a hearing in this case followed our suggestion in *Curlee* to "inform [] [D]efendant that, if [she] does not want to be represented by appointed counsel and is unable to hire an attorney by the scheduled trial date, [she] w[ould] be required to proceed to trial without the assistance of counsel, . . . inform[ing] [] [D]efendant of the consequences of proceeding *pro se* and conduct[ing] the inquiry required by N.C. Gen. Stat. § 15A-1242." *Id.*

¶ 42    Under *Simpkins*, forfeiture requires egregious misconduct that obstructs or delays the proceedings and the record before this panel simply does not support that determination here. *See* 373 N.C. at 541, 838 S.E.2d at 449. Instead, the record before us suggests that appointing Defendant a lawyer would have facilitated reaching an outcome in the case rather than frustrating it and therefore, I would hold that Judge Wood's forfeiture conclusion was error. Accordingly, I respectfully dissent.