IN THE SUPREME COURT OF NORTH CAROLINA

No. 203PA24

Filed 20 March 2026

JAVA WARREN and JANNIFER WARREN

v.

CIELO VENTURES, INC. d/b/a SERVPRO NORTH CENTRAL MECKLENBURG COUNTY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 293 N.C. App. 784 (2024), vacating an order entered on 23 May 2022 by Judge Louis A. Trosch in Superior Court, Mecklenburg County, and remanding for further proceedings. Heard in the Supreme Court on 16 September 2025.

*Derek Crawford, Jeffrey Mitchell, and Hugo Chanez for plaintiff-appellees.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, for defendant-appellant.*

BERGER, Justice.

Plaintiffs contracted with defendant to remediate water damage to their home, but defendant never initiated the work and plaintiffs' home had to be demolished. Though the parties' agreement provided for a one-year contractual limitation period to bring any claim arising from the subject matter of the contract, plaintiffs filed an unfair and deceptive trade practices claim against defendant nearly three years after plaintiffs knew of defendant's wrongful conduct. The trial court granted defendant's

motion for summary judgment based upon the contractual limitation period, and the Court of Appeals reversed. We reverse the Court of Appeals.

## I.    Factual and Procedural Background

In July 2017, plaintiffs' water heater malfunctioned and began leaking a substantial amount of water into their home. Plaintiffs contacted their homeowner's insurance provider, which in turn contacted defendant to address the water damage. After inspecting the damage, defendant presented plaintiffs with its two-page "Authorization to Perform Services and Direction of Payment" agreement. The agreement stated in all capital letters and bold text directly above the signature line: "I have read this authorization to perform services and direction of payment, including the terms and conditions of service on the next page hereof, and agree to the same."

In underlined bold print, the words "READ CAREFULLY" appeared at the top of the second page of the two-page agreement, followed by "Note: This Contract includes a limitation of liability and limitation of remedies." The second page of the agreement also contained the contract's eleven terms and conditions of service. Relevant here, the seventh of these terms provided:

> 7. Any claim by Client for faulty performance, for nonperformance or breach under this Contract for damages shall be made in writing to Provider within sixty (60) days after completion of services. Failure to make such a written claim for any matter which could have been corrected by Provider shall be deemed a waiver by Client. NO ACTION, REGARDLESS OF FORM, RELATING TO THE SUBJECT MATTER OF THIS CONTRACT MAY BE

BROUGHT MORE THAN ONE (1) YEAR AFTER THE CLAIMING PARTY KNEW OR SHOULD HAVE KNOWN OF THE CAUSE OF ACTION.

Plaintiff Jannifer Warren signed the agreement, and plaintiffs vacated the home on 10 July 2017 for defendant to begin the remediation work. However, ten days later plaintiffs discovered that defendant had taken no action to remediate the water damage. Plaintiffs contacted another remediation company which immediately began work on the home. Despite these efforts, an assessment revealed visible mold throughout the home, and it was later demolished.[1]

On 9 July 2021, after the one-year contractual limitation period expired, plaintiffs filed an unfair and deceptive trade practices claim against defendant in Superior Court, Mecklenburg County. Defendant moved for summary judgment on 17 February 2022, and the trial court held a hearing on the motion on 17 May 2022. After considering the parties' arguments, the trial court stated, "I am going to grant the motion for summary judgment in this case based on the statute of limitations." The trial court thereafter entered an order granting defendant's motion for summary judgment on 23 May 2022. Plaintiffs appealed.

At the Court of Appeals, plaintiffs argued that N.C.G.S. § 75-16.2, which provides a four-year statute of limitation for claims brought under the Unfair and Deceptive Trade Practices Act (UDTPA), "precludes contractual time limitations of

---

[1] Prior to the filing of their complaint, plaintiffs' homeowner's insurance provider paid $871,875.00 under the dwelling portion of their policy and asserted a subrogation claim against defendant, which was settled for $100,000.00.

UDTPA claims."[2] *Warren v. Cielo Ventures, Inc.*, 293 N.C. App. 784, 786 (2024). The Court of Appeals recognized that "our courts have acknowledged the ability of parties to contractually shorten their claim limitations in some cases," but nevertheless held the one-year contractual limitation period in defendant's agreement was unenforceable because "public policy weighs against permitting contractual abrogation of the [four-year] UDTPA statute of limitations." *Id.* at 789–90. The Court of Appeals vacated the trial court's order granting defendant's motion for summary judgment and remanded for further proceedings. *Id.* at 790. Defendant petitioned this Court for discretionary review, which we allowed on 11 December 2024.

## II.    Standard of Review

"We review de novo an appeal of a summary judgment order. When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *Moseley v. Hendricks*, 388 N.C. 128, 135 (2025) (cleaned up). Similarly, we review issues of statutory interpretation de novo. *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023).

## III.    Discussion

Statutes of limitations set general time limits for bringing claims and are public policy choices that "represent the legislature's determination of the point at

---

[2] Plaintiffs also argued that "precedent rejects one-year limitation clauses for UDTPA claims as unreasonable," and the Court of Appeals rejected that argument. *Warren v. Cielo Ventures, Inc.*, 293 N.C. App. 784, 786–87 (2024). As we did not grant discretionary review on this issue, we do not address it.

-4-

which the right of a party to pursue a claim must yield to competing interests." *Id.* "The Legislature alone may determine the policy of the State, and its will is supreme, except where limited by constitutional inhibition, which exception or limitation, when invoked, presents a question of power for the courts to decide." *Holmes v. Moore*, 384 N.C. 426, 435 (2023) (quoting *State v. Revis*, 193 N.C. 192, 195 (1927)); *see also* N.C. Const. art. I, § 6 ("The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other").

Though statutes of limitations establish the maximum amount of time that can elapse between the accrual of a claim and the filing of that claim, this Court acknowledged more than a century ago that individuals may agree to contractually shorten the time to bring claims arising out of the subject matter of that contract. *See Muse v. London Assurance Corp.*, 108 N.C. 240, 241–42 (1891) ("It seems to be established that a provision in a policy that the insured may bring suit within 12 months after the less, and not later, . . . is not in contravention of the policy of statutes of limitation, and will be upheld by the courts."). The Supreme Court of the United States has also recognized this principle:

> [I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period. Such shorter periods, written into private contracts, also have been held to be entitled to the constitutional protection of the Fourteenth Amendment under appropriate circumstances.

*Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). Thus, parties may agree to decrease the general limitation period for bringing claims if: (1) no statute forbids a shorter period, and (2) the shorter period is reasonable.

The legislature has established a four-year limitation period for bringing UDTPA claims, N.C.G.S. § 75-16.2 (2025), and in the absence of an agreement to the contrary, this limitation period controls. But the parties here explicitly reduced the limitation period for any claims "relating to the subject matter" of their contract to one year. It is undisputed that plaintiff Jannifer Warren signed the contract, and plaintiffs have not argued such signing was the product of coercion or duress. *See Canteen v. Charlotte Metro Credit Union*, 386 N.C. 18, 22–23 (2024) ("[W]ritten contracts are to be construed and enforced according to their terms. . . . [W]hen the parties' intent is clearly expressed, it must be enforced *as it is written*." (cleaned up)). Nor are there any serious contentions that the legislature has enacted a statute forbidding contractual limitation periods for UDTPA claim or that a one-year limitation period is per se unreasonable. *See Horne-Wilson, Inc. v. Nat'l Sur. Co.*, 202 N.C. 73 (1932) (upholding one-year limitation); *Welch v. Phx. Ins. Co.*, 192 N.C. 809 (1926) (same).

Instead, plaintiffs argue, and the Court of Appeals agreed, that "the policy underpinning the UDTPA" prohibits the one-year limitation clause plaintiffs agreed to. *Warren*, 293 N.C. App. at 786. The Court of Appeals reasoned that because the legislative purpose of the UDTPA is "[t]o provide civil legal means to maintain ethical

standards of dealing between persons engaged in business and the consuming public," the contractual limitation must yield "where the interests of justice require vindication of the plaintiff's rights," despite the legislature's silence on the issue. *Id.* at 789–90 (cleaned up). This was error because the plain language of the statute provides no prohibition on contractual limitation.

It is not for the courts to second-guess legislative policy decisions or to insert unwritten terms into a statutory scheme. *See Lunsford v. Mills*, 367 N.C. 618, 623 (2014) ("[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used"); *In re Banks*, 295 N.C. 236, 239 (1978) ("[C]ourts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."). If the legislature intended to forbid contractually shortened limitation periods for UDTPA claims, it would have said so in the UDTPA. *See State v. Daw*, 386 N.C. 468, 476 (2024) ("When interpreting a statute, 'it must be presumed that the means employed by the Legislature to express its will are adequate to the purpose and do express that will correctly.' " (quoting *State v. Barco*, 150 N.C. 792, 796 (1909))).[3] To hold otherwise would require this Court to superimpose a

---

[3] The dissent equates legislative silence with a statutory prohibition, turning our interpretative rules on their heads. Because "[t]he Legislature is presumed to know the existing law and to legislate with reference to it," *State v. S. Ry. Co.*, 145 N.C. 495, 542 (1907), we presume that in enacting section 75-16.2 the legislature knew that "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit . . . the time for bringing on action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period," *Wolfe*, 331

contractual limitation prohibition onto the statute and thereby erode the fundamental right to contract in the absence of legislative action.

> The privilege of contracting is both a liberty and a property right. The right to contract is recognized as being within the protection of the Fifth and Fourteenth Amendments to the Constitution of the United States; and protected by state Constitutions. It has been held that the right to make contracts is embraced in the conception of liberty as guaranteed by the Constitution. . . . The Legislature has the power to impose reasonable restrictions on the right to contract when the restrictions imposed are conducive to public good. . . . But freedom of contract is the general rule and restraint the exception.

*Alford v. Textile Ins. Co.*, 248 N.C. 224, 227 (1958) (cleaned up).

Here, the legislature has not chosen to "impose reasonable restrictions" on individuals' rights to contractually shorten the limitation period for UDPTA claims, and we must therefore default to "the general rule" of freedom of contract. *Id.* Because there is no controlling statutory language prohibiting contractual limitation periods of UDTPA claims, and because plaintiffs have failed to demonstrate or meaningfully argue that the one-year limitation period here is unreasonable, the trial

---

U.S. at 608. The dissent therefore asks the reader to believe that the legislature knew its silence would allow for reasonable contractual limitation periods yet somehow intended silence in the UDTPA to be an affirmative legislative prohibition on the right to contract.

Taken to its logical conclusion, the dissent's rationale would allow for courts to judicially amend any statutory scheme by "insert[ing] words not used," *Mills*, 367 N.C. at 623, so long as the court's preferred term is "[c]onsistent with the statute's purpose." Courts are then no longer interpreting the law but impermissibly legislating from the bench. *See* N.C. Const. art. I, § 6 ("[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other[.]"); *see also The Federalist* No. 47 (James Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.").

court properly granted defendant's motion for summary judgment. The Court of Appeals therefore erred in concluding the one-year contractual limitation in this case is unenforceable.

## IV.    Conclusion

The public policy of this State, including statutes of limitations and prohibitions on decreasing limitations periods by contract, is determined by the legislature. The legislature has not prohibited downward adjustment of the limitation period for UDTPA claims, and plaintiffs have failed to demonstrate the provision is unreasonable. Accordingly, the trial court did not err in concluding defendant was entitled to judgment as a matter of law on plaintiffs' UDTPA claim. We reverse the decision of the Court of Appeals.

REVERSED.

Justice EARLS dissenting.

The Unfair and Deceptive Trade Practices Act (UDTPA) declares certain commercial practices unlawful and authorizes injured parties to bring civil actions to enforce that prohibition. N.C.G.S. §§ 75-1.1, 75-16 (2025). The statute also provides that "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." N.C.G.S. § 75-16.2 (2025).

The question presented is whether a generic contractual limitation clause contained in a standard-form service agreement may shorten that express statutory limitations period and bar a claim brought under Chapter 75. The majority holds that it does. The practical effect of that decision is to allow sophisticated parties to opt out of state law.

The facts of this case illustrate the problem. After a water heater leak severely damaged their home, plaintiffs Java and Jannifer Warren contacted their insurance provider, which referred them to defendant Cielo Ventures to remediate the property. Cielo Ventures represented that the situation was urgent and required immediate intervention, promising it would "bring in the cavalry." After signing an "Authorization to Perform Services and Direction of Payment" with Cielo Ventures, the Warrens moved into a hotel, per Cielo Ventures's instructions, while waiting for Cielo Ventures to perform remediation. However, according to the complaint, Cielo Ventures failed to perform the promised remediation work. Instead, it directed its

efforts toward remediating a twenty-two-unit apartment building nearby which had also suffered water damage, a perhaps more lucrative business opportunity, and simply never informed the Warrens that it would not be performing the promised services. Because the leaked water sat in the Warren's empty home for weeks, mold proliferated, and the condition of the home deteriorated to the point that the property ultimately had to be demolished. The Warren's insurance policy did not cover all the costs of having their home rebuilt.

The Warrens brought suit asserting a violation of the UDTPA. Cielo Ventures, in turn, relied on a provision in its service contract stating that "[n]o action, regardless of form, relating to the subject matter of this contract may be brought more than one (1) year after the claiming party knew or should have known of the cause of action." The majority holds that this contractual clause shortened the statutory four-year limitations period governing UDTPA claims.

In my view, that interpretation rests on an unreasonable inference from the statute's silence. Nothing in Chapter 75 suggests that the legislature intended the limitations period governing this statutory cause of action to be displaced by a generic private contract limitations period. On the contrary, the text, structure, and purpose of the UDTPA indicate that the General Assembly created a distinct statutory remedy designed to regulate unfair practices in the marketplace and provided its own limitations period for enforcing that remedy.

Because the majority's interpretation undermines the statutory scheme

enacted by the legislature and interprets the UDTPA in a manner that makes consumers more vulnerable to unfair contract terms, I respectfully dissent.

## I. The UDTPA creates a statutory remedy that operates independently of contractual rights.

Our task when interpreting a statute is to give effect to the General Assembly's intent. The starting point in that inquiry is the statutory text itself. When the legislature has spoken clearly, courts apply the statute as written. *E.g.*, *Fearrington v. City of Greenville*, 386 N.C. 38, 52 (2024).

At the same time, courts must interpret statutes in a manner consistent with reason and common sense. We therefore avoid constructions that would produce results the legislature could not reasonably have intended. As this Court has explained, "if a literal interpretation of a word or phrase's plain meaning will lead to 'absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control.'" *State v. Rankin*, 371 N.C. 885, 889 (2018) (quoting *State v. Beck*, 359 N.C. 611, 614 (2005)). Likewise, even where a statute's text appears clear, courts may reject a literal reading when it produces consequences "so dangerous and absurd that they could never have been intended." *Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 116 (2025) (quoting *McCullough v. Scott*, 182 N.C. 865, 876 (1921)).

These principles apply with particular force when a court is asked to draw an inference from statutory silence. A statute necessarily leaves many things unsaid. The absence of an express provision addressing a particular circumstance does not

license courts to adopt an interpretation that would undermine the statute's evident purpose. *Cf. State v. Williams*, 286 N.C. 422, 432 (1975) (instructing that a statute should not be construed in such a manner as to render it ineffective if another construction will make it effective).

The majority nevertheless does exactly that here. Chapter 75 expressly establishes a four-year limitations period for civil actions brought under the statute. N.C.G.S. § 75-16.2. The statute does not say that private contracts may, or may not, shorten that period. From this silence, however, the majority concludes that a generic contractual limitation clause may override the more specific statutory limitations period governing a UDTPA claim.

That inference is difficult to reconcile with the basic principles of statutory interpretation described above. Courts do not normally interpret statutory silence to produce results that are inconsistent with the statute's purpose and weaken the operation of the statute itself. *See Rankin*, 371 N.C. at 889; *Jackson*, 388 N.C. at 116. Yet the rule adopted by the majority permits private contracts to narrow the time within which the statutory remedy created by the General Assembly may be invoked.

Understanding the nature of a UDTPA claim is essential to resolving the question before us. The Warrens do not seek merely to enforce the terms of their contract with Cielo Ventures. Instead, they assert a cause of action created by the General Assembly through the Unfair and Deceptive Trade Practices Act.

The UDTPA declares unlawful "[u]nfair methods of competition in or affecting

commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a). The statute further authorizes any person injured by such conduct to bring a civil action and mandates treble damages upon proof of a violation. N.C.G.S. § 75-16. Through this statutory framework, the General Assembly created a cause of action designed not merely to remedy private contractual disputes but also to regulate unfair practices in the marketplace.

Importantly, a claim under the UDTPA exists independently of traditional contract and tort remedies. "[I]t is well-recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract." *Boyd v. Drum*, 129 N.C. App. 586, 593 (1998), *aff'd per curiam*, 350 N.C. 90 (1999). Indeed, the statute is designed to apply in situations where contractual remedies would be inadequate or unavailable. The "[UDTPA] was needed because common law remedies" such as "[t]ort actions" for fraud and deceit and contract actions for "breach of express [or] implied warranties, . . . [or] recision or restitution," had heavy burdens of proof and evidentiary hurdles, and thus "had proved often ineffective" to protect "aggrieved consumers." *Marshall v. Miller*, 302 N.C. 539, 543–44 (1981). As the Court of Appeals puts it, a UDTPA action "is the creation of statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature." *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, *disc. rev. denied*, 311 N.C. 751 (1984) (cleaned up).

North Carolina courts have consistently recognized the breadth of the statute's

reach. For example, this Court has explained that the UDTPA applies broadly to business activities "in or affecting commerce." *Bhatti v. Buckland*, 328 N.C. 240, 243 (1991). Consistent with that expansive language, courts have applied the statute in a wide range of consumer and commercial contexts. The Court of Appeals has held, for instance, that the rental of residential property falls within the statute's scope because such transactions constitute activity "in or affecting commerce." *Stolfo v. Kernodle*, 118 N.C. App. 580, 583 (1995).

Further, the Court of Appeals has expressly recognized that an action for unfair or deceptive trade practices is "distinct" from other claims including breach-of-contract and common-law-based claims and may proceed independently of those claims. *Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 250–51 (2006). Put another way, UDTPA claims are not collapsed into claims arising from a contract, including for limitations purposes. Where a party brings both UDTPA claims and contract claims, the Court of Appeals has applied UDTPA's four-year limitations period to the UDTPA claims and the contract limitations period to the contract claims. *Id.* at 251 ("[P]laintiffs' UDTP claim was separate and distinct from plaintiffs' claims on the underlying insurance policy [a contract], and the UDTP claim is therefore governed by the four-year statute of limitations applicable to such claims."). *Cf. also Skinner v. Preferred Credit*, 172 N.C. App. 407, 414 (2005) (applying UDTPA's four-year limitations period to the UDTPA claim and the three-year limitations period to the usury claim and holding plaintiffs' claims were barred under both), *aff'd on other*

*grounds*, 361 N.C. 114 (2006). So parties may agree via contract to the scope of their contract claims, but contract claims are distinct from UDTPA claims, including for statute of limitations purposes.

Likewise, a plaintiff need not even be in contractual privity with the defendant to pursue relief under Chapter 75. *Hyde v. Abbott Lab'ys, Inc.*, 123 N.C. App. 572, 584 (1996). And where the parties are in privity, proving breach of contract is usually not enough to prove a UDTPA claim. *E.g.*, *Boyd*, 129 N.C. App. at 593 ("A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [UDTPA]." (cleaned up)). Instead, a UDTPA action is proved according to "the facts of each case and the impact the practice has in the marketplace." *Marshall*, 302 N.C. at 548. These decisions reflect the statute's function as a mechanism for regulating fair conduct in commerce rather than merely enforcing private agreements.

Accordingly, courts have recognized UDTPA claims arising from conduct that formally complied with a contract yet nevertheless deceived consumers or violated public policy. For example, the Court of Appeals has held that a lender's scheme disguising usurious loans as "rebate" contracts constituted an unfair and deceptive practice under Chapter 75, even though the transactions were structured as contractual agreements. *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 635–36 (2005). In such cases, the statute serves precisely the function the General Assembly intended: providing a remedy where private contractual arrangements

operate in a manner that harms consumers or distorts fair competition. Similarly, the Court of Appeals has declined to apply a contractual forum selection clause to a UDTPA claim where doing so would defeat UDTPA's protections for aggrieved North Carolina consumers. *Wall v. Automoney, Inc.*, 284 N.C. App. 514, 531 (2022).

The statutory structure of Chapter 75 reinforces the conclusion that the limitations period governing UDTPA claims is fixed by the legislature rather than by private agreement. The UDTPA does more than prohibit certain practices in commerce. It also establishes a comprehensive enforcement scheme. Section 75-16 authorizes injured parties to bring civil actions to enforce the statute and mandates treble damages upon proof of a violation. N.C.G.S. § 75-16. Other provisions authorize the Attorney General to independently prosecute violations in the name of the State. N.C.G.S. § 75-15 (2025). Among this comprehensive enforcement scheme, the General Assembly prescribed the limitations period governing such actions: "Any civil action brought under this Chapter . . . shall be barred unless commenced within four years after the cause of action accrues." N.C.G.S. § 75-16.2.

By enacting § 75-16.2, the legislature made a deliberate determination regarding the time within which claims under Chapter 75 may be brought. When the General Assembly creates a statutory cause of action and specifies the period within which it may be enforced, that determination reflects the legislature's judgment concerning how the statutory remedy should operate. *See Rankin,* 371 N.C. at 896 ("It is always presumed that the legislature acted with care and deliberation and with

full knowledge of prior and existing law." (cleaned up)). It is plainly the prerogative of the General Assembly as our state's "policy-making agency" to "supplant[ ]" a "common law rule and [thereby adopt its new rule as] the public policy of the State in respect to that particular matter." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169 (2004) (quoting *McMichael v. Proctor*, 243 N.C. 479, 483 (1956)). The General Assembly could reasonably determine that contract and tort actions could not alone safeguard fair marketplace competition and create a new remedial scheme with that policy goal in mind.

In summary, because the UDTPA regulates marketplace conduct rather than merely contractual obligations, the statute's protections cannot be reduced to the terms of the parties' agreement. A contract may define the rights and obligations between the parties, but it does not necessarily determine whether a business practice violates Chapter 75. The statutory prohibition applies independently of the parties' private arrangements.

This distinction is critical here. The cause of action asserted by the Warrens does not arise from Cielo Ventures's contract alone. It arises from a statute enacted to regulate unfair practices in commerce and to provide injured parties with a means of enforcing that prohibition. The legislature expressly prescribed the applicable statute of limitations, and that four-year period is what should govern.

## II. The majority's interpretation rests on an unreasonable inference from statutory silence.

The majority nevertheless concludes that a contractual limitation clause may

shorten the UDTPA's express limitation period. In essence, the majority reasons that the legislature knew parties could contract out of the statute of limitations for a statutory action, so we should infer from the legislature's silence that it intended that result. But none of the cases the majority cites support that this is what the legislature "knew." Rather, the majority cites myriad cases affirming a different proposition: that contracts may provide reasonable limitation periods for contract actions—that is, actions *arising out of the contract* to enforce rights fixed by the contract itself. *See Muse v. London Assurance Corp.*, 108 N.C. 240, 241–42 (1891) (action on insurance policy contract was bound by policy's one-year limitation period because "the rights of the parties in such cases are fixed by the contract" (cleaned up)); *Alford v. Textile Ins. Co.*, 248 N.C. 224, 226 (1958) (action on insurance policy); *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 588–89, 599 (1947) (action on fraternal benefit certificate, an insurance policy); *Horne-Wilson, Inc. v. Nat'l Sur. Co.*, 202 N.C. 73, 73–74 (1932) (action on surety bond tied to contract for services). None of these cases stand for the proposition that contracts can curb statutory protections. The majority's reasoning thus merely restates the point it is trying to prove.

Of course, where a right arises from contract, the contract can reasonably limit the scope of the right. That is a different matter from whether a contract can limit the scope of rights arising from statute—let alone whether the legislature would have understood as much when it enacted UDTPA. The majority's conclusion that private

agreements can cabin a legislatively created statutory remedy is as is inconsistent with legislative intent as it is unsupported by precedent.

We have long recognized limits on the ability of private parties to waive statutory protections enacted for public purposes. Although individuals may waive many rights that exist for their personal benefit, courts have been reluctant to enforce agreements that undermine statutory protections designed to address broader public concerns. As this Court has explained, rights may be waived "unless forbidden by law or public policy." *Clement v. Clement*, 230 N.C. 636, 639 (1949).

More recently, this Court reiterated that principle when considering whether a borrower could waive the protections of North Carolina's anti-deficiency statute through a guaranty agreement. We concluded that such a waiver would violate public policy because the statute was enacted to address specific instances of the public's vulnerability to lender overreach. *High Point Bank & Tr. Co. v. Highmark Props., LLC*, 368 N.C. 301, 308 (2015). In that circumstance, even though the statute was silent on whether guaranty agreements could waive the statute's protections, permitting contractual waiver would have undermined the statutory protection the legislature intended to provide. *See id.*

The same concern arises here. Chapter 75 represents the General Assembly's effort to regulate unfair practices in commerce and to provide injured parties with an effective means of enforcing that prohibition. Allowing private form contracts to shorten the limitations period governing UDTPA claims would permit businesses to

unilaterally narrow the availability of the statutory remedy—precisely the sort of arrangements that the statute was designed, in part, to police.

Indeed, the implications of the majority's rule extend beyond the limitations period itself. If statutory silence permits private contracts to alter the time within which a UDTPA claim may be brought, it is difficult to see why other features of the statutory enforcement scheme could not likewise be restricted by contract. Yet the statute's structure suggests the opposite: the General Assembly established the cause of action, defined the available remedies, and specified the period within which those remedies may be pursued, in part because contract remedies alone were insufficient.

Taking the majority's reasoning to its logical conclusion, the majority appears to demand that if the General Assembly enacts a statute that will affect commercial dealings that are also governed by contract, the General Assembly must limit the operation of contracts explicitly. But it is unclear what principle of statutory interpretation gives this Court the right to compel the General Assembly to use particular words when that body endeavors to protect consumers and regulate the marketplace. Such a judicially imposed "magic words" requirement seems inconsistent with our obligation to merely give effect to the legislature's intent, however expressed.[1]

---

[1] The majority states that the approach to statutory interpretation advanced here amounts to "impermissibly legislating from the bench," citing the Federalist Papers. *See* majority *supra* n.3. It is hardly tyranny on the order of the eighteenth-century British monarchy to conclude that when the legislature created a cause of action and said what the limitation period was, it did not necessarily assume parties could just opt out. The majority

In short, the legislature created the cause of action and determined that it may be brought within four years. Absent some indication that the General Assembly intended private contracts to alter that determination, courts should apply the statute as written.

## III.    This case does not involve an express agreement to limit statutory UDTPA claims.

Finally, even if some contracts could limit a UDTPA statute of limitations period, it is unreasonable to conclude that this one in particular did so. The contractual provision at issue appears in Cielo Ventures's standard service agreement and states that "[n]o action, regardless of form, relating to the subject matter of this contract may be brought more than one (1) year after the claiming party knew or should have known of the cause of action." The majority interprets this general language as a specific decision to shorten the statutory limitations period governing the Warrens' claim under Chapter 75. But in my view, the language of this contract clause does not clearly demonstrate an intent to limit statutory claims under the UDTPA. The provision refers generally to actions "relating to the subject matter

---

tellingly does not respond to the point that the legislature may have reasonably assumed that there is a difference between a contract limiting a contract right, and a contract limiting a statutory right.

Perhaps the majority is intent on collapsing UDTPA actions into contract actions here because it believes that that the Warrens only adduced enough evidence at summary judgment of a time-barred breach of contract claim, not an unfair or deceptive commercial practices claim. There may be merit to that view, but that is not the issue presented on appeal. By casting its decision in the form of sweeping assertions about the right to contract, the majority torpedos a statute based on words not in the statute, a troubling result for a Court that styles itself as textualist.

of this contract," in a provision explaining limitations on "[a]ny claim by Client for faulty performance, for nonperformance or breach under this Contract." But a claim under Chapter 75 does not arise from the contract itself. As explained earlier, the statute regulates unfair or deceptive practices in commerce and imposes duties that exist independently of the parties' contractual obligations.

At most, the clause reflects an agreement about the time for bringing contract claims. Interpreting such general language to curtail the statutory limitation period governing UDTPA claims extends the provision well beyond its ordinary meaning. In effect, the majority recasts a narrow contractual limitation clause as a broad restriction on the availability of a statutory remedy created by the General Assembly.

This appeal therefore does not require us to decide whether parties might ever expressly agree to limit statutory claims in some other context. This is not a case involving sophisticated parties who expressly negotiated the scope of their statutory remedies. The limitation clause at issue here appears in a standard-form service agreement presented to homeowners confronting an urgent and unexpected loss where their insurer recommended the service provider. The record does not suggest that the parties bargained specifically over the availability of statutory remedies under Chapter 75, much less that they intended to curtail those remedies specifically.

Perhaps a different case—one involving sophisticated commercial actors who clearly and expressly agreed to limit the availability of statutory claims—might present a closer question. But that is not the case before us. Here, the Court permits

a generic contractual provision to shorten the limitations period governing a statutory cause of action created by the General Assembly, effectively allowing general language in a form contract to evade consumer protections against general language in form contracts. Because I would not interpret Chapter 75 to allow that result, I respectfully dissent.

Justice RIGGS joins in this dissenting opinion.